**Barbara Ann ROBERTS,**
**Plaintiff–Appellee,**

v.

**LEBANON APPLIANCE SERVICE CO.,**
**et al., Defendants–Appellants.**

Supreme Court of Tennessee,
at Nashville.

Nov. 6, 1989.

Tracy Shaw, Nashville, for defendants-appellants.

Robert Snow Nix, Lebanon, for plaintiff-appellee.

## OPINION

FONES, Justice.

This is a Worker's Compensation case wherein plaintiff, widow of James L. Roberts, brought suit against his employer Lebanon Appliance Service Company for compensation benefits. Aetna Casualty and Surety Co., the workers' compensation insurance carrier for said employer was permitted to intervene as a party defendant. Aetna answered the complaint denying liability to plaintiff, asserting that, (1) the decedent, James L. Roberts, was an owner or partner of Lebanon Appliance Service Co. at the time of his death, and as such was not an "employee" under workers' compensation law; and (2) his death did not arise out of and in the course and scope of decedent's employment.

At trial Lebanon Appliance Company did not take a position as to whether Roberts was or was not a partner at the time of his death, but asked the court to interpret the legal significance of the occurrence as it took place.

The trial court heard testimony on the limited issue of whether or not the deceased was an employee on the date of his death, and reserved judgment in order to permit plaintiff to submit medical proof on the issue of causation. Subsequently, the parties stipulated that James L. Roberts died 11 April 1986 from a heart attack while aiding in the installation of an ice machine with Raymond Manners, a partner of said company, and that the act of pushing the ice machine aggravated a pre-existing heart condition suffered by Mr. Roberts, causing his death.

The trial court held that decedent was an employee thereby entitling his widow and dependents to workers' compensation benefits. Upon our *de novo* review of the findings of fact of the trial judge accompanied by a presumption of correctness, we find that the preponderance of the evidence is otherwise. *See* T.C.A. § 50–6–225(e).

James L. Roberts had been employed by Lebanon Appliance Service Company, installing and repairing appliances for approximately 17 to 18 years prior to his death. In late 1985 and continuing into 1986 the owners of the company, Sam Gibson and Raymond Manners, began discussions with Mr. Roberts concerning an offer made to Roberts to purchase a 10 percent ownership interest in the partnership/business. The only issue before this Court is whether Roberts, at time of injury and death, was a member of the partnership and not an employee of the partnership within the purview of Act.

T.C.A. § 50–6–102(a)(2)(B) provides:

(B) The term "employee" also includes a sole proprietor or a partner who devotes full time to the proprietorship or partnership and elects to be included in the definition of employee by filing written notice thereof with the division of workers' compensation at least thirty (30) days before the occurrence of any injury or death, and may at any time withdraw the acceptance by giving notice of the withdrawal to the division of workers' compensation.

Sam Gibson considered Roberts to be a partner. Gibson primarily took care of the business or so-called "up-front" operations in the partnership.

The agreed price of Roberts' 10 percent share of the partnership was calculated in the amount of $12,000. Mr. Gibson testified that Roberts wrote a check payable to Lebanon Appliance Company in the amount of $12,000 dated 18 February 1986. In the bottom left-hand corner of that check was written "for 10% business." Gibson considered Roberts a partner; the $12,000 check was deposited into the account of Lebanon Appliance Service Company.

Gibson testified that after the agreement was reached he called up an insurance agent to tell them "we've got a new partner, what do we do" and the agent sent some papers to Mr. Gibson for Mr. Roberts to fill out indicating whether he wanted to be covered under the Worker's Compensation Act since he was a partner. Mr. Gibson gave the papers to Roberts, but he stated that he did not want coverage.

The evidence at trial revealed that the deceased was paid for his work at an hourly rate until 24 January 1986, at which time

his method of compensation was changed to a weekly draw of $250, which was the same amount of weekly draw as Manners and Gibson. The $250 payment to Roberts and the two partners did not include any deductions such as those paid to regular employees; social security and other federal tax deductions. The amount was increased for each of three men to $275 on 31 January 1986. Profits of the company were divided at year end.

In addition, Mrs. Barbara Ann Roberts testified that her husband had decided that if he could borrow the $12,000, he would purchase 10 percent interest in the business and become a partner. She and her husband executed a note to secure a $12,000 loan at Watertown Bank for the sole purpose of purchasing a partnership interest. Mrs. Roberts testified she had considered her husband a partner until she discovered after his death that a contract had not been signed. Mrs. Roberts stated upon cross-examination:

Q. As far as you know, your husband never changed his mind regarding his purchase of the partnership interest, is that correct?

A. As far as I know.

Q. Your husband never indicated to you that he was going to back out or change his mind insofar as his express desire to remain a partner, is that correct?

A. That's correct.

However, upon redirect examination she testified that she did not know "whether there was a partnership agreement or not."

Mr. Raymond Manners testified that Mr. Roberts had expressed reservations about the purchase of a partnership interest and related to him on the morning of his death "let's don't do anything, wait until you get back and I'll try to make up my mind whether I want to go through with this or not." Mr. Manners basically ran the field operations of the company and had more of a day-to-day relationship with Mr. Roberts. Further, he testified that he did not consider Roberts as a partner and did not treat him as such.

Edward Roberts, the decedent's brother, stated that he had a conversation with him about a week or two before his death and he told him that he "didn't know if he wanted to go through with this [purchasing 10% interest] or not."

The joint tax return of Mrs. Roberts and her deceased husband for calendar year 1986 shows the gross sum of $4,025, net $3,308 as received from a business. Under the facts in this record the only possible source of that income was the partnership entity Lebanon Appliance Service, Co., and since it was not wages it was obviously paid to him as his draw as a partner. That tax return also shows that James L. Roberts paid social security self-employment tax on the net sum $3,308. That payment also confirms that he was receiving payment as a partner, not an employee.

After hearing all the proof the trial judge stated from the bench:

So, the court is of the opinion that you've got one partner that felt like he was and one didn't. And if these two main partners cannot agree whether or not he was a partner, you've got to have all three people to agree. They didn't agree.

So, the court is going to find, in fact, that he was not a partner as a matter of law.

In the trial judge's memorandum and order of judgment he provides: "Raymond Manners did not consider Roberts to be a 'partner' at the time of his death, and that therefore Roberts was an 'employee' on April 11, 1986."

T.C.A. § 61–1–105 of the Tennessee Uniform Partnership Act defines a partnership as an association of two or more persons to carry on as co-owners of a business for profit. In determining whether Roberts was a partner no one fact or circumstance is the conclusive test, each case must be decided upon consideration of the totality of all relevant facts. In *Wyatt v. Brown*, 39 Tenn.App. 28, 281 S.W.2d 64 (1955) the court stated:

The controlling intention is the legal intention deductible from the acts of the parties. It is not essential that the parties actually intend to become partners. The existence of a partnership is not a

question of the parties' undisclosed intention or even of the words they use; nor is it essential that the parties have knowledge of the legal effect of their acts. It is the intent to do the things which constitute a partnership that usually determines whether or not the relationship exists between the parties, and, if they intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or avoid the relationship.

*Id.* 281 S.W.2d at 67.

59A Am.Jur.2d *Partnership* § 152 (1987) provides:

[W]here intent is in dispute, it may be ascertained objectively from all the evidence and circumstances. It is not essential that the parties know that their contract, in law, creates a partnership. The legal effect of the parties' agreement, not their subjective intent, determines whether there is a partnership.

Where parties agree on all matters which, in law, constitute a contract of partnership, it will be presumed that they intend that contract notwithstanding that the parties propose to avoid the liability otherwise attaching to partners, intend to avoid partnership, or even expressly stipulate that they are not partners.

Based upon all the evidence presented at trial, and the totality of circumstances surrounding Roberts' relationship with Gibson and Manners, it is clear that Roberts was not acting as an "employee" at the time of his death. T.C.A. § 50–6–102(a)(2) defines employee as an individual "in the service of an employer ... under any contract of hire or apprenticeship, written or implied." Roberts was not working under a traditional contract of hire at the time of his death. Prior to his death there was an offer tendered to Roberts to become a part owner. Roberts applied for a loan of $12,000 for the sole purpose of purchasing 10 percent interest of the partnership, which he did obtain and paid the monies to Gibson. The $12,000 was deposited into the partnership account and Gibson considered him a partner. Roberts' method of payment was changed from an hourly employee to that of a weekly draw and the only other individuals paid weekly draws were Manners and Gibson.

Manners had no factual basis for his conclusory opinion that Roberts was not a partner at the time of his death. If Roberts did tell Manners and his brother that he did not know whether he wanted to "go through with this or not"—or any expression of reservation about his partnership status, it was meaningless, both in fact and in law, Roberts had consummated the purchase of a 10 percent interest, the partnership had notified its workers compensation carrier that Roberts was now and henceforth a partner, not an employee, Roberts had been offered the opportunity to be "included in the definition of employer" for purposes of the Workers' Compensation Act, and expressly declined to do so. If Roberts had in fact firmly decided that he made a mistake in becoming a partner, to be covered by the Act at the time of his death he would have had to affirmatively reverse those two actions by reestablishing himself as an "employee" on the books and records of the partnership and by notice to the insurance company of return to that status.

The judgment of the trial court is reversed and this suit dismissed at plaintiff's cost.

COOPER, HARBISON and O'BRIEN, JJ., concur.

DROWOTA, C.J., dissents.

DROWOTA, Chief Justice, dissenting.

I respectfully dissent. The sole issue on this appeal is whether Raymond Manners, Sam Gibson and James L. Roberts had formed a partnership on or before April 11, 1986, the date of Mr. Roberts' death. The parties stipulated that Mr. Roberts died from a heart attack while aiding in the installation of an ice machine with Raymond Manners and that said act of pushing the ice machine aggravated a pre-existing heart condition suffered by Mr. Roberts, causing his death. Mr. Roberts was survived by his wife of 18 years and two sons

ages 12 and 4 at the time of his death. He had been an employee of Lebanon Appliance Service Company (hereinafter Lebanon Appliance) for approximately 18 years. The trial court determined that Mr. Roberts was an "employee" of Lebanon Appliance on the date of his death and awarded death benefits to his widow and dependents in the amount of $67,200. Lebanon Appliance takes no position on the merits of this appeal. Appellant Aetna Casualty & Surety Company, the workers' compensation insurance carrier for Lebanon Appliance, was permitted to intervene below and they have appealed the trial court's award of workers' compensation benefits. The majority opinion reversed the decision of the trial court and dismissed Plaintiff's suit, finding that Mr. Roberts was a "partner" of Lebanon Appliance and as such was not an "employee" under the Workers' Compensation Law.

Our review is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e). "This standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases. Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances." *Humphrey v. Witherspoon*, 734 S.W.2d 315 (Tenn.1987). Four witnesses testified at trial: Plaintiff Barbara Ann Roberts; Raymond Manners and Sam Gibson, the owners of Lebanon Appliance; and Edward Roberts, the brother of the deceased. After reviewing this record, I cannot agree with the majority opinion that the preponderance of the evidence does not support the findings of the trial court.

The majority opinion points out that "Sam Gibson considered Roberts to be a partner" and Raymond Manners "did not consider Roberts as a partner and did not treat him as such." It is interesting to note that Mr. Gibson handled the business

end of the partnership—the "up-front" operations, and Mr. Manners handled the operational end of the partnership—he had a day-to-day relationship with Mr. Roberts. Mr. Manners and Mr. Roberts were very close, they talked daily and generally worked together. Mr. Roberts said to Mr. Manners a week before his death: "I don't know right now what I'm going to do." Mr. Manners was going on a trip to Hawaii and Mr. Roberts told him the day of his death: "let's don't do anything, wait till you get back and I'll try to make up my mind whether I want to go through with this [the partnership] or not." Edward Roberts, brother of James Roberts, testified that his brother told him about a week before his death that he did not think he would go through with purchasing a partnership interest.

As the majority opinion states, "Manners testified that Mr. Roberts had expressed reservations about the purchase of a partnership interest." The partners talked about selling Mr. Roberts a part of the business in 1985. The discussions continued into 1986. The terms of the agreement appeared to be that the bookkeeper for the Company would determine the value of the business and Mr. Roberts would pay the current partners ten percent of that value for a ten percent interest. The bookkeeper determined that the business was worth $120,000. The parties discussed the fact that the partners each had $100,000 of life insurance paid by the partnership and the partnership would purchase a life insurance policy in the amount of $20,000 on Mr. Roberts' life. Mr. Roberts was to be placed on the signature card for the bank account and would be a part of the decision making process for the partnership. Mr. Roberts would receive ten percent of the profits of the business.

On January 24, 1986, the method of compensation changed for Mr. Roberts from an hourly rate to a weekly draw. Mr. Roberts borrowed $12,000 and paid it into the bank account of the partnership on February 18, 1986, but no distribution to the partners was ever made. Mr. Roberts' duties and supervision had not changed in 1986; he

was still a service man being supervised by Mr. Manners. He had not been brought into the decision making process of the business and was not authorized to sign checks for the Company. No life insurance policy was purchased on his life. The record reveals that the partnership had filed partnership tax returns for the years 1986 and 1987 and did not list Mr. Roberts, his estate or his widow as a partner in the partnership and Mr. Manners and Mr. Gibson divided all profits equally between themselves without any distribution or accounting to Mr. Roberts' family or estate.

I am of the opinion that when Mr. Roberts died the partnership question was still unresolved and was still being discussed. There was no written partnership agreement and certainly no meeting of the minds between the parties who were contemplating the formation of a new partnership. I would affirm the trial court's finding that Mr. Roberts was an employee on the date of his death, thereby entitling his widow and dependents to workers' compensation benefits.