GREENWOOD MILLS, INC., Plaintiff,

v.

Hayden E. BURRIS, James R. Omer, Sr. & Associates and the Estate of Gus Wood, III, Defendants.

No. 2:99–0005.

United States District Court, M.D. Tennessee, Northeastern Division.

Jan. 10, 2001.

Thomas H. Lawrence, III, Hale, Headrick, Dewey, Wolf, Golwen, Thornton & Chance, PLLC, Memphis, TN, for Greenwood Mills, Inc, pltfs.

Hayden E. Burris, Gainesboro, TX, pro se.

Raymond Dale Bay, Winston N. Harless, Lewis, King, Krieg, Waldrop & Catron, P.C., Nashville, TN, for Hayden E. Burris, James R. James R. Omer Sr. & Associates, Estate of Gus Wood, III, III, defts.

## MEMORANDUM

TRAUGER, District Judge.

This case comes before the court on Plaintiff Greenwood Mills, Inc.'s Motion for Summary Judgment (Docket No. 27),

to which Defendants James R. Omer, Sr. & Associates (hereinafter "Omer & Associates") and Estate of Gus Wood, III have filed a Response and a Counter–Motion for Summary Judgment (Docket No. 37). Plaintiff has filed a Reply to the defendants' response and a Response to their motion for summary judgment (Docket No. 44), to which these defendants have filed a Reply (Docket No. 46). Plaintiff Greenwood Mills, Inc. has also filed a Motion for Judgment on the Administrative Record (Docket No. 17) and a Motion for Summary Judgment (Docket No. 42) against Defendant Burris, to which no responses have been filed.

## STATEMENT OF FACTS and PROCEDURAL HISTORY

Plaintiff Greenwood Mills, Inc. (hereinafter "Greenwood Mills") is the Plan Administrator for the Health and Accident Plan for Employees of Greenwood Mills, Inc. and Associated Companies (hereinafter "the Plan"), which is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Docket No. 45 at ¶¶ 1–2) Defendant Hayden E. Burris was a "covered person" under the Plan. (Docket No. 45 at ¶ 1)

The Plan, written by Greenwood Mills, contains a provision entitled "Subrogation," that provides:

> When benefits are paid to or for a person covered under this Plan the Employer will be subrogated, unless prohibited by law, to the rights of recovery of such person against any person who might be acknowledged liable or found legally liable by a Court of competent jurisdiction for the injury that necessitated the hospitalization, medical or surgical treatment for which benefits were paid. Such subrogation rights will extend only to the recovery by the Employer of benefits paid for hospitalization

and treatment. The Employer will pay fees and costs associated with such recovery.

(Docket No. 45 at ¶¶ 7–9) Neither Burris nor his lawyer, Gus Wood, III,[1] signed any additional subrogation or reimbursement agreement with Greenwood Mills. (Docket No. 45 at ¶ 10)

Burris was injured in a motor vehicle accident with a Ms. Myers on approximately January 19, 1995. (Docket No. 45 at ¶ 3; Docket No. 29, Ex. 9) The Plan paid $33,249.44 in medical expenses incurred by Burris due to that accident. (Docket No. 45 at ¶ 5) Burris apparently paid 20% of the medical expenses out of his own pocket. (Docket No. 37, Ex. 1 (Burris Dep.) at 11, 28) In addition, he may have had an $8,500 "wage claim." (Docket No. 37, Ex. 4A)

Burris signed a "contingent fee contract" on January 23, 1995, "retain[ing] and employ[ing] JAMES R. OMER and ASSOCIATES as [his] attorneys to represent" Burris in his suit against Ms. Myers. (Docket No. 29, Ex. 10) Burris received "Instructions to Client," printed on the letterhead of "Law Offices of James R. Omer/An Association of Attorneys," that instructed him, among other things, to "not talk to your own insurance company." (Docket No. 29, Ex. 11)

Gus Wood, III was the attorney who personally handled Burris' representation in his suit for damages relating to the 1995 accident. (Docket No. 40 at ¶ 4) According to James R. Omer, Sr., Wood was not an "employee" but was an "associate" in the firm of Omer & Associates, and had worked in that capacity for at least five years. (Docket No. 37, Ex. 2 (Omer Dep.) at 6, 9) Wood's income consisted of "a percentage of his cases plus he had a draw against .... work performed," drawn monthly from "a common fund." (Docket No. 37, Ex. 2 (Omer Dep.) at 7–8)

---

1. It is undisputed that Gus Wood, III, died at some point prior to the filing of Greenwood Mills' First Amended Complaint on August 26, 1999. (Docket No. 21 at ¶ 4; Docket No. 33 at ¶ 4; Docket No. 29, Ex. 5 at 12)

On July 18, 1995, Wood wrote to Burris, informing him that his medical expenses exceeded $25,000 as of that date and that his wage claim was over $8,500. Wood also mentioned that, as he had indicated to Burris earlier, Ms. Myers appeared to have maximum liability insurance coverage of $25,000. (Docket No. 37, Ex. 4A) Also dated July 18, 1995, is a letter sent to Burris from Subro Audit, Inc., Greenwood Mills' subrogation administrator, containing a request for information regarding Burris' accident and the progress of his claim. (Docket No. 29, Ex. 12)

On September 7, 1995, Wood settled Burris' claim against Ms. Myers for $50,000. (Docket No. 29, Ex. 9; Docket No. 45 at ¶ 12) Wood dispersed $32,888.27 to Burris, after deducting an attorney fee of $16,666.67, Omer & Associates expenses of $337.06 and a physician's assignment in the amount of $108.00. (Docket No. 29, Ex. 9; Docket No. 45 at ¶ 15)

In November 1995, Subro Audit again contacted Burris, who told the representative that he had not retained an attorney, was not sure if he would retain one, and believed that the third party did not have insurance coverage. (Docket No. 29, Ex. 13) This, of course, was not true; his attorney had settled the claim with the other driver's insurance company for $50,000.

By letter written on Omer & Associates letterhead and dated February 29, 1996, Wood informed Burris that "we" were contacted by a representative of Provident Life & Accident Insurance Company regarding "their claimed subrogation." (Docket No. 29, Ex. 6) Wood wrote that he had sent the representative a copy of the accident report but would not provide any further information to the insurance company until Burris gave him authorization to do so. In a letter dated May 3, 1996, Wood thanked Burris for his correspondence of the previous month and told Burris: "I would inform the Subro Audit Inc. lady that you sustained medical expenses in the amount of $26,671.86[2] and recovered only $25,000.00 which was the full amount of insurance coverage of the adverse party and as a result your [sic] were not 'made whole'." Wood further stated that "Tennessee Law provides there is no subrogation and you will not have to pay them anything." (Docket No. 29, Ex. 7)

Greenwood Mills filed its Complaint on January 15, 1999, seeking equitable relief under ERISA and enforcement of the terms of the Plan against Burris (Docket No. 1). Burris filed an Answer on March 19, 1999 (Docket No. 6). With the court's leave, Greenwood Mills filed a First Amended Complaint, naming additional Defendants James R. Omer, Sr. & Associates and Estate of Gus Wood, III (Docket No. 21).

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir.1989). In determining whether the moving party has met its burden, the court must view the factual evidence and draw reasonable inferences

---

**2.** The record does not contain the exact amount of medical expenses paid by Burris out of his own pocket, but he claims to have paid only 20% of what was incurred and did not testify in his deposition that he paid $26,271.86 out of his own pocket. If Greenwood Mills' payment of $33,249.44 represents 80% of what was incurred, Burris would have been out of pocket only $8,312.36.

in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). If the nonmoving party, however, fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537–38 (6th Cir.1999).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Gaines v. Runyon*, 107 F.3d 1171, 1174–75 (6th Cir.1997). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. To determine whether the nonmoving party has raised a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor. *Id.* at 255, 106 S.Ct. at 2513.

The court should also consider whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Street*, 886 F.2d at 1479. "There is no genuine issue for trial unless the nonmoving party has produced enough evidence for a jury to be able to return a verdict for that party." *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir.2000). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," or enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249–252, 106 S.Ct. at 2510–12. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir.1999) (citations omitted).

## DISCUSSION

The issues before the court are: (1) whether Greenwood Mills is entitled to judgment against Burris based on his failure to respond to Greenwood Mills' motion for judgment on the administrative record; (2) whether Omer & Associates may be held liable for actions attributable to Wood; (3) whether Omer & Associates and Wood's estate are liable under ERISA for breaching a fiduciary duty owed to Greenwood Mills; (4) whether Omer & Associates and Wood's estate are liable under ERISA pursuant to 29 U.S.C. § 1132(a)(3) for violating the terms of the Plan; and (5) whether Omer & Associates and Wood's estate are liable to Greenwood Mills under Tennessee law for tortious interference with contractual relations, unlawful procurement of breach of contract, and conversion of funds.

### I. *Summary Judgment Against Defendant Burris*

On August 20, 1999, Greenwood Mills moved for judgment on the administrative record. On November 8, 1999, the court entered an Order for Defendant Burris to retain an attorney by November 26, 1999, and for that attorney to file a notice of appearance and a response to Greenwood Mills' Motion for Judgment on the Administrative Record within thirty days thereafter. (Docket No. 32) On December 29, 1999, Greenwood Mills filed a Motion for Summary Judgment.

Burris has failed to retain a new lawyer or to respond to Greenwood Mills' motions. Accordingly, Greenwood Mills is entitled to judgment against Burris on its claim that Burris violated the terms of the Plan by failing to remit monies due Greenwood Mills from the settlement proceeds under the Plan's subrogation clause. *See* FED. R. CIV. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").

■ Greenwood Mills claims that Burris is required to remit $33,249.44, the total amount of medical payments it made on Burris' behalf. However, Greenwood Mills' Plan does not include a provision unambiguously establishing a priority right to full recovery. Generally, an insured must be made whole *before* the plan can enforce its subrogation right as to any settlement proceeds. As the Sixth Circuit has recently stated, "[t]he make-whole rule provides that an insurer cannot enforce its subrogation rights unless and until the insured has been made whole by any recovery, including any payments from the insurer." *Copeland Oaks v. Haupt,* 209 F.3d 811, 814 (6th Cir.2000) (citing 16 COUCH ON INSURANCE 2d § 61:64 ("[N]o right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered both from the insurer and the wrongdoer.")). *See also Blankenship v. Estate of Bain,* 5 S.W.3d 647, 650–52 (Tenn.1999); *York v. Sevier County Ambulance Auth.,* 8 S.W.3d 616, 621 (Tenn.1999). The "make whole" rule is to apply unless the plan language contains "clear and specific language rejecting the make-whole rule ...." *Id.* at 813.

■ However, the "make whole" rule is based upon general equitable principles. *See, e.g., Marshall v. Employers Health Ins. Co.,* 1997 WL 809997, at *3 (6th Cir. Dec.30, 1997). Allowing Burris to keep the monies from the settlement so that he may be made whole does not seem fair in light of the fact that he concealed from Greenwood Mills the true amount of his settlement. Indeed, under the circumstances as they have been presented here, Burris should not benefit from the "make whole" rule where his actions were designed to perpetrate a fraud upon his insurer. *See, e.g., Ries v. Humana Health Plan, Inc.,* 1995 WL 669583, at *5 (N.D.Ill. Nov.8, 1995) (unpublished) (noting that federal courts have considered and applied the "unclean hands" doctrine in ERISA actions). If the "make whole" rule were applied here, Greenwood Mills would not be reimbursed for the monies it paid out for Burris' medical costs. The court is mindful that, in all likelihood, Burris is no longer in a financial position to remit all of the monies he received as part of his settlement with Ms. Myers, but this court does not believe principles of equity should favor Burris over Greenwood Mills. Thus, the court finds that Burris must reimburse Greenwood Mills for the payments made by Greenwood Mills on Burris' behalf.

According to the proof in the record, the Plan paid $33,249.44 in medical bills incurred by Burris as a result of his 1995 motor vehicle accident. (Docket No. 45, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts No. 5) Pursuant to its subrogation agreement with Burris, Greenwood Mills is not entitled to more than this amount.

In light of this court's ruling on Greenwood Mills' motion for summary judgment against Burris, the court denies Greenwood Mills' motion for judgment on the administrative record as moot.

## II. *Partnership of Defendants Omer & Associates and Wood*

The next issue to be decided is whether Omer & Associates can be held liable for

actions taken by Wood in the course of his representation of Burris.

### A. *Existence of Partnership*

■ Defendants Estate of Wood and Omer & Associates deny that any partnership relationship existed, asserting instead that Wood operated as either a "sole practitioner" or "independent contractor" and, therefore, Wood's estate bears sole responsibility for actions taken by Wood during the course of his representation of Burris. (Docket No. 39 at 2) The burden of proof in establishing a partnership rests with Greenwood Mills. *See Badger v. Boyd,* 16 Tenn.App. 629, 65 S.W.2d 601, 608 (1933).

A "partnership" under Tennessee law is defined as "an association of two (2) or more persons to carry on as co-owners a business for profit and includes, for all purposes of the laws of this state, a registered limited liability partnership." Tenn. Code Ann. § 61–1–105(a) (Supp.1999). An entity will not be deemed a partnership when it is:

> an association of two (2) or more persons licensed to practice a profession and/or engage in an occupation . . . for compensation or profit under the laws of this state, *when created by written articles of association duly recorded* as herein provided, which contain in substance the following provisions characteristic of corporate entities . . . .

Tenn.Code Ann. § 61–1–105(c)(1) (Supp. 1999) (emphasis added). There is no evidence in the record that Omer & Associates had written articles of association recorded in the Tennessee Secretary of State's Office and in the Davidson County Register's office, as required by Tenn. Code Ann. § 61–1–105(c)(2), so this exclusion cannot apply to Omer & Associates.

■ In determining whether a partnership exists, the court must consider "all relevant facts, actions, and conduct of the parties." *Bass v. Bass,* 814 S.W.2d 38, 41 (Tenn.1991) (quoting *Roberts v. Lebanon Appliance Serv. Co.,* 779 S.W.2d 793, 795 (Tenn.1989)). A partnership will be im-

plied from the circumstances if the parties in question "have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Id.* The court may find a partnership has been created, notwithstanding the parties' own understanding of their actions or even their contrary intent, for it is simply "the intent to do the things which constitute a partnership that determines whether individuals are partners." *Id.*

By statute, "receipt by a person of a share of the profits of a business is prima facie evidence" that he or she is a partner. Tenn.Code Ann. § 61–1–106(4) (1989). In his deposition, James R. Omer, Sr. testified that the "common fund" of Omer & Associates, into which all fees were deposited, was utilized to pay common expenses, including a "firm" malpractice policy, and was divided up among the lawyers at the end of each month. (Docket No. 37, Ex. 2 at 6–8)

All correspondence of record between Wood and Burris is written on the letterhead of "Law Offices of James R. Omer & Associates/An Association of Attorneys." (Docket No. 29, Exs. 6–7) The letterhead contains the names James R. Omer, Terrance E. McNabb, Gus A. Wood III, and James R. (Rusty) Omer, Jr., with a common address and phone number. The "Contingent Fee Contract" Burris signed plainly states that Burris "employ[ed] JAMES R. OMER and ASSOCIATES as my attorneys to represent me in my claim for damages against Gail Myers." (Docket No. 29, Ex. 10) In this contract, Burris agrees to pay "said attorneys" one third of his recovery as their fee, and nowhere does the contract single out Wood individually. Burris' "Settlement Sheet" following the resolution of his suit against Ms. Myers lists the expenses as those of "JAMES R. OMER & ASSOCIATES." (Docket No. 29, Ex. 9) Finally, the "Instructions to Client" information sheet sent to Burris is on the Omer & Associates letterhead and states, "so that *we* may best

serve you ...." (Docket No. 29, Ex. 11 (emphasis added))

█ From these facts and circumstances, the court concludes that the four attorneys, including Wood, were in a "business relationship for profit, combining their ... labor, skill, experience, [and] money." *Bass*, 814 S.W.2d at 41. They were implied partners, operating and representing themselves collectively as "James R. Omer & Associates." [3]

### B. *Partnership Liability*

Under Tennessee law, "all partners are liable, jointly and severally, for everything chargeable to the partnership." Tenn. Code Ann. § 61–1–114 (Supp.1999). Therefore, Wood's estate and Omer & Associates are jointly and severally liable for any claims arising out of the actions taken by Wood in his representation of Burris.

### III. *Breach of Fiduciary Duty*

Greenwood Mills claims that, by dispersing the proceeds of the settlement to Burris and not distributing monies to Greenwood Mills for medical expenses it paid on Burris' behalf, Wood breached fiduciary duties owed to Greenwood Mills under ERISA.

As codified at 29 U.S.C. § 1002(21)(A), ERISA states that:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has

any discretionary authority or discretionary responsibility in the administration of such plan ....

ERISA further provides, at 29 U.S.C. § 1109(a):

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary ....

Greenwood Mills urges the court to disregard the general consensus among other circuits that lawyers engaged in the representation of plan beneficiaries do *not* assume an ERISA-defined fiduciary relationship with the plan. (Docket No. 28 at 15–17)

Greenwood Mills' claim is identical to that advanced by the plaintiff, and rejected, in *Chapman v. Klemick*, 3 F.3d 1508, 1509 (11th Cir.1993), *cert. denied*, 510 U.S. 1165, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). Basing its reasoning on both ERISA's statutory language and policy implications for attorney-client relationships, the court in *Chapman* decided that the existence of a subrogation agreement between the plan and the beneficiary, of which the beneficiary's lawyer had knowledge,[4] did not transform the beneficiary's lawyer who dispersed settlement proceeds between himself and his client into an ERISA fiduciary. *Id.* The *Chapman* court's analysis has been consistently applied. *See, e.g., Southern Council of In-*

---

3. The plaintiff argues, in the alternative, that there is a partnership created by estoppel under Tenn.Code Ann. § 61–1–115. The court need not reach this issue.

4. Greenwood Mills claims only that Wood knew of Burris' subrogation agreement with the Plan; it does not claim that Wood independently agreed with Greenwood Mills to uphold the provisions of the Plan. (Docket No. 21 at ¶ 21)

*dus. Workers v. Ford,* 83 F.3d 966, 968 (8th Cir.1996) (holding attorney does not become fiduciary to plan by representing beneficiary and having "control over the settlement proceeds"); *Hotel Employees & Restaurant Employees Int'l Union Welfare Fund v. Gentner,* 50 F.3d 719, 720–721 (9th Cir.1995); *Rhodes, Inc. v. Morrow,* 937 F.Supp. 1202, 1214–15 (M.D.N.C. 1996).

ERISA requires that a fiduciary exercise "authority or control respecting management or disposition" of plan assets. 29 U.S.C.A. § 1002(21)(A) (1999). Greenwood Mills asserts that the settlement proceeds became "plan assets at the moment they were released from the third-party tortfeasor" by operation of the Plan's subrogation provision. (Docket No. 28 at 15) This assertion runs counter to the very nature of contract-based claims. The Plan only held a claim to that money, an interest requiring further action by the Plan before it could become possessory. *See Chapman,* 3 F.3d at 1510.

■ Because the court concludes that Burris' settlement proceeds were not instantaneously and automatically rendered Plan assets the moment Burris reached a settlement with the third party tortfeasor, Wood cannot be classified as an ERISA-defined fiduciary of Greenwood Mills.[5] A plan beneficiary's lawyer does not become a fiduciary to the plan by representing a beneficiary and dispersing that beneficiary's settlement proceeds. Thus, Wood's estate is not liable for breaching a fiduciary duty to Greenwood Mills.

5. Equally compelling are the serious policy concerns implicated by creating a *fiduciary* relationship between an attorney and an entity whose interests may be diametrically opposed to those of the attorney's client. *See Chapman,* 3 F.3d at 1510. An attorney has an "ethical obligation to his or her client that does not admit of competing allegiances." *Id.* at 1511. Greenwood Mills contends that an attorney would not be neglecting his obligation to further his client's interests by refusing to distribute the client's settlement proceeds in any way contrary to the plan's wishes (Docket No. 28 at 17), but it is self-evident that, if the interests of the beneficiary

## IV. *Liability Under ERISA for Violating the Plan's Terms*

### A. *Liability*

Greenwood Mills claims that Wood violated the subrogation clause of the Plan and, therefore, his estate and Omer & Associates are liable under 29 U.S.C. § 1132(a)(3).

Section 1132(a)(3) provides that:

A civil action may be brought ... by a participant, beneficiary, or fiduciary[6] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Although § 1132(a)(3) delineates remedies available to enforce a plans' terms and to redress violations of those terms, it is silent as to the identity of parties who can be liable for such violations.

The Sixth Circuit has made clear that where ERISA is silent, federal courts are to interpret its scheme, "fill[ing] in the interstices of the statute[ ]" by applying federal common law. *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 236 n. 23 (6th Cir.1986) (citations omitted) (noting that the underlying policy of ERISA is consistent with the concept of protecting against unjust enrichment). *See also Muse v. International Bus. Ma-*

and plan were aligned, then there would likely be no dispute over the funds in the first instance. ERISA itself demands that a fiduciary of a plan act "solely in the interest" of the plan and its participants. *See* 29 U.S.C.A. § 1104(a)(1) (1999). This directive will, in most instances, be impossible for a lawyer to follow when representing a beneficiary in a dispute with plan administrators.

6. Defendants do not contend that Greenwood Mills lacks standing to bring a claim under 29 U.S.C. § 1132.

*chines Corp.,* 103 F.3d 490, 495 (6th Cir. 1996) (noting the development of federal common law "in those instances in which ERISA is silent or ambiguous"). Although Congress intended for the judiciary to "develop and apply federal common law" regarding ERISA, the courts may do so only "when it is necessary to effectuate the purposes of ERISA." *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir.1997) (quoting *Weiner v. Klais and Co.,* 108 F.3d 86, 92 (6th Cir.1997), and *Tassinare v. American Nat'l Ins. Co.,* 32 F.3d 220, 225 (6th Cir.1994)).

■ Unequivocally, "the *source* of this law must be the policies underlying ERISA." *Whitworth Bros. Storage,* 794 F.2d at 235 (emphasis added). Common law rules are not necessarily the "product of a federal court's own devising," and especially where a statute is silent regarding an area "traditionally of state concern," federal courts have "a strong inclination to adopt state law as the federal rule of decision." *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 616 (6th Cir.1998) (citations omitted). Such an approach may be appropriate unless there is a "significant conflict between some federal policy or interest and the use of state law," in which case, it is best for the court to devise a distinct federal common law rule. *Id.* Accordingly, even if the issue is one of "primarily state concern," the court should only adopt the forum state's law as the federal rule if doing so will not "frustrate ERISA's remedial scheme," or, more broadly, conflict with ERISA's underlying policies. *Id.* at 616–17.

The first task in interpreting ERISA's silence is to discern ERISA's underlying policies. According to the "declaration of policy" that prefaces ERISA's substantive provisions, ERISA embodies Congress' policy decision to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries … by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.A. § 1001(b)(1999). As a correlation to Congress' espoused policy of protecting participants' interests in their benefit plans, courts recognize that ERISA embodies a federal interest in the enforcement of such plans; indeed "a primary purpose of ERISA is to ensure the integrity and primacy of the written plans." *Health Cost Controls,* 139 F.3d at 1072 (citations omitted). *See also Trustees of Michigan Laborers' Health Care Fund v. Gibbons,* 209 F.3d 587, 591 n. 2 (6th Cir.2000) (finding that "ERISA authorizes the federal courts to fashion a body of federal common law to enforce agreements governed by the statute").

Courts have also discerned that ERISA embodies equitable principles that should be incorporated into federal common law. *See, e.g., Ford,* 154 F.3d at 618 (finding the endorsement of equitable principles in ERISA's remedial scheme, as it neither demanded punitive liability nor allowed for overcompensation of beneficiaries); *Whitworth Bros. Storage,* 794 F.2d at 236. In *Copeland Oaks,* the Sixth Circuit highlighted this consideration of equitable principles in its adoption of the "make whole" doctrine into the federal common law governing subrogation agreements in ERISA plans. The court applied this doctrine as the default rule based on considerations of equity, yet allowed for plans to deviate from that requirement if done so explicitly within the plan's provisions. *See Copeland Oaks,* 209 F.3d at 813–14.

Defendants Omer & Associates and Wood's estate argue that this court should follow the Eighth and Ninth Circuits and hold that, absent a contrary commitment undertaken by the lawyer, the lawyer does not violate the "terms of the plan" by failing to uphold a subrogation agreement between the plan and its beneficiary, the lawyer's client. *Gentner,* 50 F.3d at 721. *See also Southern Council of Indus. Workers v. Ford,* 83 F.3d 966, 969 (8th Cir.1996) (adopting *Gentner's* analysis). Although the Ninth Circuit in *Gentner* correctly noted that ERISA is silent as to whether a

beneficiary's lawyer can be held liable for violating the terms of the plan, its formulation of federal common law based solely upon a survey of the law of various states, with no regard for the policies and purposes of ERISA, seems misguided. *See Gentner,* 50 F.3d at 721.

The Sixth Circuit and other circuits have held that the law of the forum state may be looked to for guidance in fashioning a federal ruling where the federal statute is silent, where the matter is "traditionally of state concern," and where the state rule is not in conflict with the policies underlying the federal statute. *See Ford,* 154 F.3d at 616–17 and authorities cited therein. At issue here is the professional conduct of lawyers, an area that traditionally has been governed by state law. *See Brotherhood of R.R. Trainmen v. Virginia,* 377 U.S. 1, 84 S.Ct. 1113, 1116–17, 12 L.Ed.2d 89 (1964). Thus, if Tennessee law does not conflict with ERISA's policies or purposes, this court may legitimately adopt Tennessee's rule as its own. *See Ford,* 154 F.3d at 616–17.

■ Under Tennessee law, a lawyer "will be held civilly liable to a non-client where he knowingly participates in the extinguishment of a subrogation interest of a non-client third party and delivers to his client funds that he knows belong to the third party and knows or should know, that he has thereby placed the funds beyond the reach of the third party." *Aetna Cas. & Sur. Co. v. Gilreath,* 625 S.W.2d 269, 274 (Tenn.1981).[7] If a beneficiary's lawyer knows that his client's insurer is subrogated to his client's claim to the extent of benefits paid, and the lawyer plays "a part in attempting" to prevent his client's insurer from collecting the amount due it under the insured's agreement with the insurer, the lawyer will not escape liability. *Id.* (citing *Motors Ins. Corp. v.*

*Blakemore,* 584 S.W.2d 204, 207 (Tenn.Ct. App.1978)).

■ Before the court can determine whether the application of state law would be appropriate, the court must first identify the relevant policies of the controlling federal statute. A primary purpose of ERISA is to ensure that there is uniformity in the administration of plans and protecting the interests of beneficiaries of these plans. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Furthermore, there is a strong interest in "ensur[ing] the integrity and primacy of the written plans." *Health Cost Controls,* 139 F.3d at 1072. Finally, as discussed above, the ERISA scheme is consistent with notions of not allowing parties to be unjustly enriched, see *Whitworth Bros. Storage,* 794 F.2d at 236, and not overcompensating plan beneficiaries, see *Ford,* 154 F.3d at 618.

■ The court finds that the Tennessee rule on attorney conduct in this area does not conflict with ERISA's purposes and underlying policies. It will therefore furnish the federal rule of law in this case. A lawyer who is fully aware of his client's obligation under an ERISA plan to honor the subrogation interest of his employer may be held liable under § 1132(a)(3). The emphasis on the sanctity of plan provisions does not allow lawyers to be the enablers for participants to avoid following an ERISA plan's provisions without being called to account for such actions under ERISA's remedial scheme. Congress' stated goal of ensuring the security of participants' interests in ERISA plans, an interest that necessarily includes the solvency of the plan, will be advanced by erecting a barrier to beneficiaries' lawyers' interference with the plan's (or its related entity's) rightful recoupment of paid benefits under subrogation provisions. Hold-

---

**7.** Although *Gilreath* is a workers' compensation case, this general principle is not limited to such cases. In that case, the court held that the statutory law was merely an "addi-

tional circumstance" that reinforced this otherwise valid proposition. *See Gilreath,* 625 S.W.2d at 274.

ing lawyers liable for diverting monies due plans into the pockets of their clients or themselves is to uphold the established policy, exemplified in ERISA's remedial scheme, of equity to all involved with plans—a principle thwarted if lawyers were allowed to enrich themselves unjustly in direct contradiction of the plan's terms.

In a February 29, 1996 letter from Wood to Burris, written five months *after* the settlement of Burris' claim in September 1995, Wood informed Burris that Omer & Associates had "received a communication from ... Provident Life[8] ... relative to their claimed subrogation." (Docket No. 29, Ex. 6) Wood assured Burris that he did not know where it would lead, but "it is nothing more than what we expected last spring." *Id.* A reference to "last spring" made in February of 1996 could only refer to the spring of 1995, which would have been several months before Wood reached a settlement of Burris' claim and distributed the proceeds. Thus, it seems, that early in his representation of Burris, Wood knew of and expected Greenwood Mills to assert its subrogation right under the Plan.

On May 3, 1996, Wood again wrote to Burris, in response to an earlier letter from Burris. Wood instructed Burris that he "would inform the Subro Audit lady that you ... *recovered only $25,000* which was the full amount of insurance coverage of the adverse party and as a result you were not 'made whole'. Under those circumstances, Tennessee law provides there is no subrogation and you will not have to pay them anything." (Docket No. 29, Ex. 7 (emphasis added)) Wood's own words reveal that: (1) he instructed Burris to misrepresent the amount of money recovered in settlement of Burris' auto accident claim from Greenwood Mills; (2) he assured Burris that, under the circumstances as Wood falsely contrived them to be, Burris should not pay Greenwood Mills any amount at all; and, (3) he directly received the proceeds of the settlement and distributed them to Burris and himself, taking no account of Greenwood Mills' subrogation interest under the Plan.

■ The court finds that Wood knew of the Plan's subrogation provision, yet disbursed the settlement monies to Burris and himself and counseled Burris to lie to the Plan's subrogation administrator for the purpose of avoiding remitting monies due under the Plan's terms. Under these facts, Wood's estate is liable under § 1132(a)(3) for violating the terms of an ERISA-governed plan that established a right of subrogation in Greenwood Mills. Since Wood's estate is liable under § 1132(a)(3), Omer & Associates is jointly and severally liable with the estate because of the partnership relationship that the court has already found to exist. What the plaintiff seeks is payment of its subrogation interest. Burris has been found liable for this same payment, see Section I above, so all defendants will be jointly and severally liable for the money due to be paid to Greenwood Mills, the exact amount of which will depend upon further proof.

### B. *Defense of Privilege*

The court next addresses the defendants' contention that Wood is not liable under § 1132 because of a "privilege" Wood enjoyed as Burris' lawyer. (Docket No. 46 at 11–12).

■ In asserting this privilege, the defendants overlook a key requirement under their own proposed rule. For a lawyer to be "privileged" from liability for actions taken in contradiction to his client's contractual agreements, the lawyer cannot employ "improper means," nor act on "malicious" or "illegal motives." *Edwards v. Travelers Ins. of Hartford, Conn.,* 563 F.2d 105, 122 (6th Cir.1977). *See also* 7 AM. JUR.2d *Attorneys at Law* § 250 (1997); RESTATEMENT (THIRD) OF

---

8. Provident Life and Accident Company was the former claims administrator for the Plan.

CIGNA is the successor-in-interest to Provident Life. (Docket No. 30, Reagan Aff. at ¶ 1)

THE LAW GOVERNING LAWYERS, § 78 cmt. g, at 118 (Tent. Draft No. 8, 1997). Thus, any such "privilege" does not include "knowingly [treading] upon the legal rights of others." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 151 Reporter's Note, cmt. g (Tent. Draft No. 8, 1997) (citing *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (2d Cir.1977)).

■ In the case at bar, Wood's actions should not be shielded by some sort of attorney privilege. Clearly, Wood took action which violated the Plan's terms. He knew of Greenwood Mills' Plan-provided subrogation right yet counseled his client to lie to the rightful subrogee, thus employing "improper means," with the stated goal of evading Greenwood Mills'. claim. Furthermore, he dispersed settlement monies to Burris[9] which the Plan dictated should be bestowed upon Greenwood Mills, thus "knowingly treading upon" Greenwood Mills' legitimate right under the Plan to be subrogated to the extent of the benefits paid on Burris' behalf.

### C. *Remedy*

Although Wood, and therefore his partners and estate, will be held liable for violating the Plan's terms under § 1132(a)(3), Greenwood Mills may obtain only "appropriate equitable relief ... to redress such violations." 29 U.S.C.A. § 1132(a)(3). The Supreme Court has interpreted "equitable relief" to include those remedies "*typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original). *See also Varity Corp. v. Howe*, 516 U.S. 489, 509–10, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (citing *Mertens* for the proposition that

compensatory and punitive damages are not equitable relief within the meaning of § 1132(a)(3)); *Gerbec v. United States*, 164 F.3d 1015, 1024 (6th Cir.1999) (following *Mertens*); *Allinder v. Inter–City Prods. Corp.*, 152 F.3d 544, 552 (6th Cir.1998) (applying *Mertens* to deny plaintiff compensatory or punitive "money damages").

The Supreme Court has interpreted § 1132's specified equitable relief, "even in its more limited sense," to include restitution of "ill-gotten plan assets or profits." *Mertens*, 508 U.S. at 260, 113 S.Ct. 2063. *See also Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1422 (11th Cir.1998) ("Even though disgorgement of profits. may produce money, *Mertens* makes it clear that disgorgement of profits is a distinctly equitable remedy different from the legal remedy of compensatory damages for breach of fiduciary duty.") As an equitable remedy, "restitution generally is awarded to prevent unjust enrichment to the defendant." *Schwartz v. Gregori*, 45 F.3d 1017, 1022 (6th Cir.1995) (citing RESTATEMENT OF RESTITUTION § 1 cmt. e (1937)). *See also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 945 (8th Cir.1999) (noting that the "classic case of restitution" is "disgorging the profits from the ill-gotten wrongdoer"); Karl L. Stoecker, "ERISA Remedies After *Varity Corp. v. Howe*," 9 DEPAUL BUS. L.J. 237, 249 (1997). In contrast, compensatory legal remedies "focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." *Kerr*, 184 F.3d at 944 (citing Dan B. Dobbs, LAW OF REMEDIES § 4.1(1) (abr.2d ed.1993)).

■ Pursuant to § 1132(a)(3), Greenwood Mills seeks restitution against all defendants. (Docket No. 21 at ¶ 42) Greenwood Mills specifies that it is not

---

**9.** Although Wood's estate maintains, without providing any supporting evidence of its assertion, that Burris paid approximately $26,672 of his medical bills out of his own pocket, such a payment by Burris would, even after application of the "make whole" rule,

still leave approximately $23,000 in settlement monies that the Plan required to be paid to Greenwood Mills, as subrogee, towards the $33,249.44 it paid for medical bills incurred by Burris as a result of the 1995 motor vehicle accident. (Docket No. 29, Exs. 7, 8)

seeking money damages to compensate it for all losses resulting from Wood's wrongful conduct and requests that the court simply grant it "equitable relief" in any form. (Docket No. 44 at 10–11) The court finds that "appropriate equitable relief" in this case consists of ordering disgorgement of the profits gained by Wood's Plan-violating conduct—the monies he and his firm drew from Burris' settlement. *See* 29 U.S.C. § 1132(a)(3); *Blue Cross & Blue Shield of Ala. v. Sanders,* 138 F.3d 1347, 1353 (11th Cir.1998). "The purpose of disgorgement is to force a 'defendant to give up the amount by which he was unjustly enriched' rather than to compensate" the plaintiff for his losses resulting from the defendant's acts. *S.E.C. v. Johnston,* 143 F.3d 260, 263 (6th Cir.1998) (citations omitted).

To prevent Wood's estate and Omer & Associates from being unjustly enriched by Wood's wrongful conduct, they must be disgorged of any amount in excess of a reasonable fee for Wood's services to Burris. In this case, the monies disgorged from Wood's estate and Omer & Associates should be paid to Greenwood Mills, the rightful subrogee under the Plan. *See id.* Although the Plan provides that Greenwood Mills "will pay fees and costs associated with such recovery" of monies for medical costs (Docket No. 37, Ex. 3 at 68), the court finds that, since the money due Greenwood Mills is approximately sixty-six percent of the total settlement award to Burris, Greenwood Mills' entitlement should, as it previously offered to Burris, be reduced by sixty-six percent of the reasonable fee determined upon further proof. *See* Docket No. 29, Ex. 1A (March 26, 1999 letter from Greenwood Mills to Burris, in which Greenwood Mills states that it would agree to reduce its recoupment "by sixty-six percent of the actual hours spent by your attorney on this case multiplied by $125.00[, the reasonable hourly rate for this type of work in Nashville]").

Accordingly, in order to determine the appropriate amount to be disgorged, Omer & Associates must produce and/or reconstruct any time records relating to Wood's representation of Burris. The court will allow the firm to retain a portion of a reasonable hourly fee for the time expended by Wood. The remainder will be disgorged and paid over to Greenwood Mills.

## V. State Law Claims

In addition to its claims under ERISA, Greenwood Mills also seeks to hold Wood's estate and Omer & Associates liable under Tennessee law for conversion, unlawful procurement of breach of contract, and tortious interference with contract. (Docket No. 21 at ¶¶ 45–62) [10]

ERISA expansively preempts "any and all State laws insofar as they … relate to any employee benefit plan," not only those laws specifically targeting such plans. 29 U.S.C.A. § 1144(a)(1999). *See Pilot Life Ins.,* 481 U.S. at 47, 107 S.Ct. 1549. A state law "relates" to a plan if it "has a connection with or reference to such a plan," that is not "too tenuous, remote or peripheral." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490, (1983). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit."

---

**10.** With respect to its unlawful procurement of contract claim, Greenwood Mills alleges that "[t]he Plan is a valid and enforceable legal contract" and "[t]hrough its actions of disbursing the settlement funds to Burris, James R. Omer & Associates procured the violation of the Plan provisions." (First Amended Complaint at ¶¶ 47–48) Greenwood Mills alleges that these same actions constitute tortious interference with Greenwood Mills' Plan. (First Amended Complaint at ¶ 56). As for its conversion claim, Greenwood Mills alleges that "[a]t the time of the third party's settlement payment to James R. Omer & Associates, Greenwood Mills, Inc. had an entitlement to $33,249.44 of the $50,000 recovered by Burris" and the defendants "wrongfully exercised dominion and control over the settlement funds …." (First Amended Complaint at ¶¶ 57–58)

*Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991). Quite simply, if "Congress has designed a mechanism to enforce rights or duties of ERISA entities, the broad preemption of ERISA will prevent the application of state law." *Agrawal v. Paul Revere Life Ins. Co.*, 205 F.3d 297, 302 (6th Cir.2000) (citations omitted).

██ The court has found that Greenwood Mills may enforce its rights as an ERISA-related entity against the defendants via operation of § 1132(a)(3). Therefore, Greenwood Mills cannot also have the court apply state law to remedy the same violations of those rights. *See id.* at 299. *See also Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 808 (6th Cir. 1999) (finding state law misrepresentation claim preempted and interpreting its ERISA preemption analysis as focusing on "ERISA's ability to provide the remedy that the plaintiffs seek"). Here, Greenwood Mills' state law claims of conversion, unlawful procurement of breach of contract and tortious interference with contract are clearly related to the Plan. *See Cromwell*, 944 F.2d at 1276 (finding that the plaintiff's state law claims of promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith were preempted, and stating that "[t]his circuit . . . has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA").

Accordingly, Greenwood Mills' state law claims are preempted and these claims are dismissed.

## CONCLUSION

Greenwood Mills is entitled to summary judgment against Burris, on its claim that Burris violated the terms of the Plan by not adhering to the Plan's subrogation provision and remitting monies due Greenwood Mills from the settlement proceeds. Defendants Omer & Associates and Wood's estate are entitled to summary judgment on Greenwood Mills' claims under ERISA of breach of fiduciary duty. Greenwood Mills is entitled to summary judgment against Omer & Associates and Wood's estate on its claim that they are liable under 29 U.S.C. § 1132(a)(3) for violating the Plan's terms. Omer & Associates and Wood's estate will be ordered to disgorge themselves of the attorney's fee deducted from the settlement in the amount of $16,667.67, less sixty-six percent of a reasonable hourly fee to be determined upon further proof.

Greenwood Mills' state law claims of conversion, tortious interference, and unlawful procurement of breach are preempted by ERISA, and will therefore be dismissed with prejudice.

In its motion for judgment on the administrative record and for summary judgment against Burris and its motion for summary judgment against Omer & Associates and Wood's estate, Greenwood Mills seeks to recover the $33,249.44 it paid in benefits on behalf of Burris. All defendants are jointly and severally liable for the amount determined to be due Greenwood Mills. *See, e.g., Resolution Trust Corp. v. Block*, 924 S.W.2d 354, 356 (Tenn. 1996) (joint and several liability "attaches to action of 'two or more persons [who] owe to another the same duty, and [who] by their common neglect of that duty . . . injure [the plaintiff].'"); *Ollice v. Pugh*, 1987 WL 4902, at **2–3 (Tenn.Ct.App. May 27, 1987).

An appropriate Order will enter.

### *ORDER*

Plaintiff Greenwood Mills, Inc.'s Motion for Summary Judgment (Docket No. 42) against Defendant Burris is GRANTED. Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 17) against Burris is DENIED as moot.

Plaintiff's Motion for Summary Judgment (Docket No. 27) is GRANTED in

part and DENIED in part. Summary judgment is granted in favor of Greenwood Mills on its claim that Omer & Associates and Wood's estate are liable under 29 U.S.C. § 1132(a)(3) for violating the Plan's terms. Omer & Associates and Wood's estate will be ordered to disgorge themselves of the attorney's fee deducted from the settlement in the amount of $16,667.67, less sixty-six percent of a reasonable hourly fee to be determined upon further proof.

Defendant Omer & Associates and Estate of Gus Wood, III's Counter–Motion for Summary Judgment (Docket No. 37) is GRANTED in part and DENIED in part. Summary judgment is granted in favor of Omer & Associates and Wood's estate on Greenwood Mills' claims under ERISA of breach of fiduciary duty. In addition, Greenwood Mills' state law claims of conversion, tortious interference, and unlawful procurement of breach are dismissed with prejudice.

All defendants are jointly and severally liable for the amount determined to be due Greenwood Mills. Omer & Associates is ordered to file an affidavit by February 13, 2001 that documents the time spent by the firm on its representation of Burris.

It is so Ordered.