## FRED WYATT, etc. v. JOHN M. BROWN et al.—
281 S. W. (2d) 64.

Eastern Section. January 7, 1955.

Petition for Certiorari denied by Supreme Court, June 10, 1955.

Frank W. Wilson, of Oak Ridge, for plaintiff in error.

Richard Stair, of Oak Ridge, and Thomas H. Goodman, of Knoxville, for defendants in error.

HOWARD, J. This suit originated in the Trial Justice Court of Anderson County, Tennessee, by a civil warrant filed originally by C. U. O'Neal, but later amended to include Fred Wyatt, against John F. Brown and Lloyd Dearing, allegedly doing business as a partnership. The warrant charges that defendants were paid the sum of $1,000 upon their contract to dig a well which they would guarantee to·provide water fit for human consumption, and that defendants had breached their contract in failing to provide usable water and had refused to refund plaintiff's money. The Trial Justice Court found for the plaintiff against each of the defendants in the sum of $1,000.

Both defendants perfected appeals to the Circuit Court of Anderson County where each filed written pleas in

abatement denying the existence of a partnership, and, without waiving their plea in abatement, also filed oral pleas of the general issue. The cause was heard without a jury, and resulted in a judgment in the sum of $1,000 for the plaintiff against Lloyd Dearing, the suit against Brown being dismissed.

The plaintiff has perfected an appeal to this Court from the judgment dismissing the suit against Brown, and errors have been assigned directed at the findings and conclusions of the Circuit Judge, the chief complaints being, (1) that the Court erred in holding that Brown and Dearing were not partners, (2) that the Court erred in excluding the testimony of witnesses as to certain admissions made to them by Dearing that he and Brown were partners, and (3) that the Court erred in holding that Brown was not bound by any contract made between plaintiff and Dearing with respect to guaranteeing the quality of water to be obtained from the well.

The Circuit Judge found that no partnership existed between Brown and Dearing, and unless the evidence preponderates against this finding, the judgment must be affirmed. Code Section 10622.

The record discloses the following undisputed facts: That Brown and Dearing shared equally in the profits of Dearing's well digging operations, and they would have shared equally in any losses sustained; that Brown kept a check on Dearing and the jobs he was doing, and they together supplied pipe for casing the well; that Brown, after the controversy herein arose, conferred with O'Neal and stated that he didn't know if there was anything that could be done about the well, that it looked "like the only thing would be to drill again," and that

Brown offered to pull the pump from the well and chlorinate it; that Brown was not only frequently at the site of the operation making suggestions, but that it was necessary for him to approve the allowance of a cash discount to O'Neal, and that when difficulties arose from time to time they were cleared by Dearing with him; that on the previous trial of the case, before the Justice of the Peace, Brown did not deny that there was a partnership between him and Dearing. Nowhere in the testimony of Brown or any other witness was there any indication that Brown's share of the profits was in payment of any debt, interest or rent, or that Dearing's share of the profits was in lieu of wages.

The early English decisions appear to have treated the sharing of profits as conclusive evidence of a partnership; 40 Am. Jur., Sec. 33, p. 147; Polk v. Buchanan, 37 Tenn. 721. Over a period of years exceptions have been engrafted on this rule, the present law being Code Section 7846(4), enacted in this State in 1917, and reading as follows:

"The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment (a) as a debt by installments or otherwise; (b) as wages of an employee or rent to a landlord; (c) as an annuity to a widow or representative of a deceased partner; (d) as interest on a loan, though the amount of payment vary with the profits of the business, or (e) as the consideration for the sale of the good will of a business or other property by installments or otherwise."

Dearing testified, on cross examination, that he considered himself and Brown as being partners. There was

no objection to this evidence, and it was properly admitted. This testimony did not fall in the class of a declaration out of court by Dearing, testified to by other witnesses, but was direct testimony in court, subject to cross examination, and did not, therefore, fall under the shadow of the hearsay rule.

■ Defendant in his brief refers to the cases of Vanzant v. Kay, 21 Tenn. 106, and Yancey v. Marriott, Frisby & Co., 33 Tenn. 28, 29, which held that a co-partner is not a competent witness to prove the existence of a partnership. These cases were decided in 1840 and 1853, and apparently are only restatements of the old common law rule that an interested witness is not a competent witness; 58 Am. Jur., Sec. 159, p. 114. However, this ancient rule was abolished by statute in England in 1851, and in most of the States, Tennessee following suit in 1867. Code Sec. 9777; 58 Am. Jur., Sec. 172, p. 121. It is, therefore, clear that under the present existing law a partner is a competent witness to give direct testimony in court, subject to cross-examination, as to the existence or nonexistence of a partnership.

■ It is argued on behalf of the defendant that there was no intent to form a partnership and that no partnership can result without such intent. Obviously Dearing did intend to enter a partnership, for he stated that he was a partner.

In 68 C. J. S., Partnership, it says:

"The controlling intention is the legal intention deducible from the acts of the parties. It is not essential that the parties actually intend to become partners. The existence of a partnership is not a question of the parties' undisclosed intention or even of the words they use; nor is it essential that the

parties have knowledge of the legal effect of their acts. It is the intent to do the things which constitute a partnership that usually determines whether or not that relationship exists between the parties, and, if they intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or avoid the relationship." Section 10, page 416.

"In determining whether persons are partners as to third persons, the intention of the parties with reference to the formation of a partnership is a question of fact, and is to be ascertained from a consideration of all the terms of the agreement, and the entire transaction, the conduct of the parties, and the surrounding circumstances. The legal effect of the contract taken as a whole is controlling, and it will not be overthrown by the mere fact that the partners do or do not refer to themselves as partners, or by single provisions, or by stipulations such as those which limit liability or expressly declare that a partnership is not intended or agreed on.

"Where a purpose of entering into a partnership relation is made manifest, all subterfuges of either party, resorted to for the purpose of escaping partnership liability, will be disregarded." Sec. 24, Subsec. 4, page 444.

■ Generally, what will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact. 68 C. J. S., Partnership, Sec. 59, page 484; 40 Am. Jur., Sec. 87, p. 190.

■ Applying the foregoing rules to the instant case, we think that the greater weight of the evidence showed that Brown and Dearing were partners, and that the

learned Circuit Judge committed error in holding to the contrary. Therefore, the first assignment will be sustained.

■■ Likewise, the third assignment of error will be sustained. This assignment pertains to Dearing's authority to bind the partnership by the contract he made with the plaintiff that the water would be fit for human consumption. The general rule is that each partner has authority to bind the partnership with respect to matters germane to the partnership business, 40 Am. Jur., Sec. 137, p. 226, and the agreement in question seems to clearly fall within this classification and is, therefore, binding upon the partnership. See also Code Sec. 7848.

■ Defendant contends that the evidence was insufficient to show a breach of the contract on the ground that the well was not chlorinated before tests of the water were made, and that only by previous chlorination and successive tests thereafter can there be established credible proof as to whether or not the contract was breached. The Court below found there was sufficient evidence to support the finding of breach of contract, and we are of the opinion that the evidence does not preponderate against this finding. The evidence not only established a contract to supply ''good water'', or water that would pass a health inspection, but showed that the water was badly discolored, had an unpleasant odor, and contained organisms harmful to the human health. It is true that the expert witnesses testified the usual practice would be to first chlorinate the water and then conduct a series of successive tests to conclusively establish the health standard of the water. However, we are satisfied that, despite the lack of such conclusive tests, there was sufficient evidence to sustain the finding of the trial court in this respect.

 Defendant further contends there was no written assignment of any contract rights from Wyatt to O'Neal, and it is true that Wyatt so testified on cross examination. However, a reading of all the evidence discloses that Wyatt and O'Neal did intend that O'Neal receive the benefits of the contract, and both Dearing and Brown accepted O'Neal as a party thereto and received $800 from him. Generally, the acceptance of benefits estops a person from questioning the validity and effect of a contract. Wilson v. Wilson, 23 Tenn. App. 244, 130 S. W. (2d) 140; 31 C. J. S., Estoppel, Sec. 110, page 350.

 Finally the defendant contends that the payments made by Wyatt and O'Neal constituted some sort of "acceptance, release, accord and satisfaction". This payment was made before any dispute arose as to the quality of the water. In fact, at that time no pump had been installed, and the water had not been examined. There was no discussion between the parties as to this constituting a release or settlement of any dispute for at that time there was no argument. There could have been, under these circumstances, no discharge of Dearing's liability under the contract. 12 Am. Jur., Sec. 355, p. 921.

Because of the conclusions heretofore reached, we deem it unnecessary to consider the question raised in the second assignment regarding certain admissions made by Dearing to third parties, in Brown's absence, to the effect that he and Brown were partners.

It results, for reasons indicated, that the judgment below will be reversed and a judgment will be entered in this Court for the plaintiff against the defendant Brown for $1,000 with interest accruing from March 11, 1954, and costs.

McAmis, P. J., and Hale, J., concur.