In re Phillip Stephen
HENDERSON, Debtor.

Robert H. WALDSCHMIDT, Trustee,
Plaintiff/Appellee,

v.

Bobby DUDLEY and Nancy Dudley,
Defendants/Appellants.

No. 3:90–0299.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 26, 1991.

---

Robert H. Waldschmidt, Howell, Fisher & Branham, Nashville, Tenn., for debtor and plaintiff/appellee.

Lucius P. Hawes, Jr., Hopkinsville, Ky., Rob Moyer, Fleming, Rudolph, Ross & Fendley, Clarksville, Tenn., for defendants/appellants.

## MEMORANDUM

WISEMAN, Chief Judge.

This bankruptcy appeal involves a dispute between the appellants and the Trustee over certain assets of the Debtor. The appellants are alleged partnership creditors of the Debtor and appeal the Bankruptcy Court's decision that the assets claimed by both sides are assets of a sole proprietorship operated by the Debtor at the time of the filing of his Chapter 7 petition. For the following reasons, the Court reverses the Bankruptcy Court's grant of summary judgment in favor of the Trustee and remands with the instruction that the Bankruptcy Court enter summary judgment in favor of the appellants.

### I.

The facts have been stipulated and the Court quotes them from the record as follows:

1. During November 1987, Appellants Dudleys, defendants in the adversary proceeding, loaned $26,000 to the debtor, Henderson, and Williams, jointly and severally; and Henderson and Williams invested that money in a retail business in Henrietta, in Cheatham County, Tennessee, known as "Henrietta IGA", and also known as "Henrietta Key Market", which they jointly owned and both worked in on a daily basis.

2. The Dudleys believed that they were loaning money to a partnership, but there are no documents that conclusively establish that the business was a partnership.

3. Effective August 1, 1988, Williams transferred his interest in the business to Henderson for $3,600 cash. A copy of a document evidencing the transfer is [at joint stipulation Tab A].

4. Henderson continued to operate the business, servicing the antecedent debt of the business, including that owed to the Dudleys, until April 17, 1989, when he filed the individual Chapter 7 bankruptcy petition underlying the adversary proceeding from which this appeal arose.

5. The Dudleys testified that they never found out that Williams had transferred his interest in the Henrietta IGA business to Henderson, until after Henderson had filed his personal Chapter 7 bankruptcy petition; Williams' affidavit, dated January 8, 1990, says "I did not advise Mr. or Mrs. Dudley of the termination of my interest in the Henrietta Key Market until after the business had closed."

6. At the time when Henderson filed his personal bankruptcy petition, the Henrietta IGA business had business equipment that was in existence at a time before Williams transferred his interest to Henderson, which has been liquidated for $2,808.75 cash; and also Henderson had on hand business inventory (grocery stock in trade), which was not the same inventory that existed at the time when Williams transferred his interest in the business to Henderson, but was turnover inventory, which has been liquidated for $20,449.95 cash.

7. The above stipulations are binding upon the parties only for the limited purpose of deciding this appeal, so that if remand to the trial court occurs to find any facts, the above stipulations shall not constitute judicial admissions.

The appellants asserted a security interest in the inventory and equipment of the Debtor but incorrectly filed the financing statement in the Register's office, rather than the Secretary of State's office. *See* Tenn.Code Ann. § 47–9–401(1)(c). The Trustee emphasized this error when he argued to the Bankruptcy Court that the Dudleys' interest was unperfected and, therefore, inferior to his rights as a judgment lien creditor. *See* 11 U.S.C. § 544. If, however, the Bankruptcy Court had found a partnership existed at the time Dudley filed his Chapter 7 petition, both

sides agree the Bankruptcy Court would have had to grant the relief requested by the Dudleys. The Trustee recognizes the critical importance of this classification.[1]

Both the appellants and the Trustee filed motions for summary judgment. The Bankruptcy Court granted the Trustee's motion, finding that the partnership terminated when, before Henderson filed his bankruptcy petition, Williams secretly transferred his interest in the business to Henderson. The Bankruptcy Court held that the Dudleys had only the rights of an unsecured creditor of a bankrupt debtor who owned a sole proprietorship. The Bankruptcy Court's classification of the business as a sole proprietorship stripped the appellants of their status as partnership creditors. This status was superior, despite the improper filing, to the status of the Trustee.

The question presented on appeal is whether the Dudleys or the Trustee should get the proceeds of the business equipment and inventory. Procedurally, the question is whether the Bankruptcy Judge erred by granting the Trustee's motion for summary judgment awarding the funds to the Trustee and denying the Dudleys' motion for summary judgment that would have awarded the funds to the Dudleys.

This Court has concluded that the Bankruptcy Court erred in determining that one partner's secret sale of his interest in the business to the other partner terminated the partnership and created a sole proprietorship. Consequently, the Bankruptcy Court also erred in granting the Trustee's summary judgment motion and denying the Dudleys' summary judgment motion.

## II.

The Bankruptcy Court, in ordering that the funds be turned over to the Trustee, reasoned that "regardless of the relation-

ship between the parties prior to the July 25, 1988 document, the assignment of Mr. Williams' interest in the market to Mr. Henderson, effective August 1, 1988, effectively terminated any partnership relationship which may have existed." Findings of Fact and Conclusions of Law at 3. The Bankruptcy Court relied on Tenn.Code Ann. § 61–1–140(b), which allows for a continuation of the business by all but one of the former partners and establishes that the creditors of the former partnership also become creditors of the individual continuing the business. The Bankruptcy Court interpreted this statute to mean that, "from August 1, 1988 forward, Mr. and Mrs. Dudley were creditors of the sole proprietorship." *Id.* at 3–4.

The Trustee suggests that the threshold question whether Henrietta IGA was a partnership is not properly before the Court. The above excerpts from the Bankruptcy Court's findings reveal that Judge Paine merely assumed a partnership existed. Because the main issue before this Court is whether the inventory and equipment of Henrietta IGA was *partnership* property on April 17, 1989, the Court either must adopt the Bankruptcy Court's approach and assume a partnership existed prior to the sale of Williams' interest or satisfy itself that the record sufficiently shows a partnership did exist.

█ The Court is satisfied that a partnership did exist. The Dudleys believed they had loaned money to a partnership. Williams and Henderson jointly owned the business. They invested the $26,000.00, which they owed jointly, in the business. They both worked in the business from day to day, and Williams received a cash payment from Henderson for transferring his interest in the business to Henderson. Tenn.Code Ann. § 61–1–105 of the Tennessee Uniform Partnership Act defines a

1. The Trustee has stated:

The trustee acknowledges that, if Mr. Williams and Mr. Henderson were engaged in a viable partnership at the time that Mr. Henderson filed his bankruptcy petition, then the filing of the petition by Mr. Henderson would have caused a dissolution pursuant to T.C.A. § 61–1–130(5), and the partnership

debts would have to be settled in full pursuant to T.C.A. § 61–1–139(2) before any dividend could be available to [the trustee].

Joint Stipulation. Plaintiff's Brief in Support of Response to Defendants' Motion For Summary Judgment and Plaintiff's Cross Motion for Summary Judgment, Tab J at 3–4.

partnership as an association of two or more persons to carry on as co-owners of a business for profit. In determining whether a particular entity is a partnership, "no one fact or circumstance is the conclusive test, each case must be decided upon consideration of the totality of all relevant facts." *Roberts v. Lebanon Appliance Service Co.*, 779 S.W.2d 793, 795 (Tenn. 1989). In *Wyatt v. Brown*, 281 S.W.2d 64, 39 Tenn.App. 28, (1955), the court stated:

> The controlling intention is the legal intention deductible from the acts of the parties. It is not essential that the parties actually intend to become partners. The existence of a partnership is not a question of the parties' undisclosed intention or even of the words they use; nor is it essential that the parties have knowledge of the legal effect of their acts. It is the intent to do the things which constitute a partnership that usually determines whether or not the relationship exists between the parties, and, if they intend to do a thing which in law constitutes a partnership, they are partners whether their purpose was to create or avoid the relationship.

*Id.*, 281 S.W.2d at 67. Applying the above rationale, the *Roberts* court rejected the argument of one businessman that he was acting as an "employee" of a second businessman. The court found the man clearly was not working under a traditional contract of hire. Rather, he had purchased a ten percent interest in the business and, therefore, was a partner. *Roberts*, 779 S.W.2d at 796. The conduct of Williams and Henderson and the circumstances surrounding their operation of Henrietta IGA convince the Court that the two men were engaged in business as a partnership. Because the record before this Court provides a sufficient basis for this conclusion, the Court will not remand this issue to the Bankruptcy Court.

The Bankruptcy Court made two principal errors in deciding that the Trustee was

entitled to the proceeds of the partnership. First, he confused the concepts of dissolution and termination of a partnership. Second, he failed to consider Tennessee statutory law governing bulk transfers.

■ Tenn.Code Ann. § 61–1–129 (1989) provides that "[o]n dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed." Undoubtedly, the partnership was dissolved on April 7, 1989, when Mr. Henderson filed a Chapter 7 bankruptcy petition. *See* Tenn.Code Ann. § 61–1–130(5) (1989). However, the assignment by Mr. Williams of all his interest in the market to Mr. Henderson effective August 1, 1988, arguably dissolved the partnership even before Henderson filed for bankruptcy. *See* Tenn.Code Ann. § 61–1–128 (1989) (defining "dissolution" as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.").[2]

The Bankruptcy Court ruled that the secret sale between Mr. Williams and Mr. Henderson, effective August 1, 1988, "effectively *terminated* any partnership relationship which may have existed." Findings of Fact and Conclusions of Law at 3 (emphasis added). However the plain meaning of Tenn.Code Ann. § 61–1–129 (1989) indicates "dissolution" and "winding up" of partnership affairs occur before a partnership is actually terminated. Clearly there was no formal winding up period because the Dudleys were not even aware of the sale of Williams' interest to Henderson. Moreover, the partnership could not terminate after dissolution until the appellants' creditor claim was paid out of the proceeds of the liquidated partnership property. The Tennessee Court of Appeals has stated that "although the partnership is dissolved, it is not terminated until the interests of the partners are set-

---

**2.** *But see* Tenn.Code Ann. § 61–1–126(a) (1989) ("A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership...."). Because the Bankruptcy Court interpreted Williams' conveyance to Henderson as a *termination* of the partnership, the Court will assume the conveyance *dissolved* the partnership in order to point out the errors in the Bankruptcy Court's interpretation.

tled." *Shepherd v. Griffin,* 776 S.W.2d 119, 121 (Tenn.App.1989). *See also* Tenn. Code Ann. § 61–1–139 (setting out rules for settlement after dissolution). For example, Tenn.Code Ann. § 61–1–139(2)(A) ranks liabilities of the partnership to "creditors other than partners" first in line for payment.

■ The Trustee asserts that Tenn.Code Ann. § 61–1–140(b) [3] is dispositive and relies on *Hodge v. DMNS Co.,* 652 S.W.2d 762 (Tenn.App.1982). In *Hodge* the court states that "[t]he partnership may allow the business to continue in the same name with the withdrawing partners being compensated for their interest in the business. . . . Although the business can be continued, the first or terminated partnership is a different business association from the partnership or other entity that operates the continuing business." The Trustee interprets this language to mean the partnership terminates and a new business begins after the partner has been compensated. However, this interpretation would result in the withdrawing partners being compensated without affording equal protection to the partnership creditors. Tenn.Code Ann. § 61–1–139 specifically safeguards partnership creditors' interests by giving priority to partnership creditors' claims over partners' claims. Hence, the Trustee cannot rely on the language in *Hodge* for the proposition asserted.

■ The Trustee also asserts that Tenn. Code Ann. § 61–1–140(b) allows for the continuation of the business as a new entity or proprietorship. Trustee's Brief at 6. The Trustee contends that the partnership creditors lose their status as partnership creditors and become general creditors of

the "new sole proprietorship".[4] This reading of Tenn.Code Ann. § 61–1–140 contradicts the clear language of the statute which states that "creditors of the dissolved partnership *are also* creditors of the person or partnership so continuing the business." Emphasis added. The Dudleys do not lose their standing as partnership creditors. Rather, they become creditors of the continuing entity.

■ Relying on *Case v. Beauregard,* 99 U.S. 119, 25 L.Ed. 370 (1878), the Trustee also argues that, after a bona fide transfer of one partner's property to another or a third party, "the equities of the partners are extinguished and, consequently, the derivative equities of the creditors are at an end. . . ." *Id.* at 125–126. This decision, however, predated Tennessee's adoption of the Uniform Partnership Act in 1917. More importantly, in this case there has been no *bona fide transfer* of one partner's property to another and, thus, the equities of the partners have not ended. Under Tennessee law, any bulk transfer without notice is *ineffective* against any creditor of the transferor. *See* Tenn.Code Ann. § 47–6–105 (1979) ("[A]ny bulk transfer . . . is ineffective against any creditor of the transferor unless at least ten (10) days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons hereafter provided. . . ."). A "bulk transfer" is "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory. . . ." Tenn.Code Ann. § 47–6–102.[5] *See also*

3. Tenn.Code Ann. § 61–1–140(b) provides the following:

   When all but one (1) partner retire and assign (or the representative of a deceased partner assigns) their rights in partnership property to a remaining partner, who continues the business without liquidation of partnership affairs, either alone or with others, *creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business.*
   Emphasis added.

4. If the Dudleys are considered only general creditors, the Trustee's interest is superior to the

Dudleys' because the Dudleys filed their financing statement in the wrong office.

5. Tenn.Code Ann. § 47–6–103 lists the transfers which are not subject to the Bulk Sales Act. The only arguably applicable exception in this case is the seventh:

   A transfer to a new business enterprise organized to take over and continue the business, if public notice of the transaction is given and the new enterprise assumes the debts of the transferor and he receives nothing from the transaction except an interest in

*York v. Ambrose*, 300 S.W. 586, 156 Tenn. 314 (1927) (holding sale without notice required by Bulk Sales Law is void as to creditors, whatever it may be, as between buyer and seller). A sale by one partner of any portion of stock, including his half interest, is a sale otherwise than in "the ordinary course of the transferor's business" and is presumed fraudulent unless the Bulk Sales Law is complied with. *See Howell v. Howell*, 215 S.W. 278, 142 Tenn. 31 (1919).

When Williams transferred his half interest in the partnership to Henderson, the transaction was not in the ordinary course of the market's business and the Dudleys were not given notice at least 10 days before the transfer. Therefore, the "secret sale" was ineffective against the Dudleys, whose rights clearly were prejudiced by the lack of notice.

The Bankruptcy Court's ruling destroyed the Dudleys' priority status as partnership creditors, despite the fact that they received no notice or opportunity to reach the partnership assets before the exiting partner, Williams, took his money out of the partnership. Assuming the fraudulent transfer still *dissolved* the partnership between Williams and Henderson,[6] the Bankruptcy Court clearly erred in ruling the transfer *terminated* the partnership. The Bankruptcy Court failed to consider that the winding up of partnership affairs had not been completed.

Finally, the Court rejects the Trustee's argument that the inventory purchased by Henderson after August 1, 1988, is not partnership property but is property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Based on the above analysis, Henderson was not a sole proprietor on August 1, 1988, because the partnership was still in the winding up phase. Tenn. Code Ann. § 61-1-107(a) defines partnership property as "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise on account of the partnership...." The equipment was purchased before the partnership was dissolved, so the equipment proceeds clearly are partnership property. The inventory proceeds are turnover of inventory that was in stock when Williams sold his interest in the business to Henderson. These proceeds also are partnership property. *See Shepherd v. Griffin*, 776 S.W.2d 119, 122 (Tenn.App.1989) ("Until termination of the partnership the interests of the partners in partnership assets ... do not change, even though they exist at or occur after dissolution.").

### III.

Based on the Court's interpretation of §§ 61-1-129, 61-1-130 and 61-1-140, the Dudleys did not lose their priority status as partnership creditors when Mr. Williams transferred his interest in the partnership to Mr. Henderson. The partnership affairs were not wound up and, therefore, no sole proprietorship resulted. Therefore, the debts of the partnership must be settled in

---

the new enterprise junior to the claims of creditors.
*Id.* at (7). Even assuming the other elements of this subsection are met, the parties gave no public notice of the transaction and, therefore, the exception does not apply.

**6.** Tenn.Code Ann. § 47-6-105 merely makes a noncomplying bulk transfer ineffective *against the creditor(s)*. *See* Comment 2 to § 47-6-104 ("Any such creditor or creditors [who did not receive notice] may ... disregard the transfer and levy on the goods as still belonging to the transferor, or a receiver representing them can take them by whatever procedure to local law provides."); Comment 2 to § 47-6-111 ("The main sanction for noncompliance with the Article ... is that the transfer 'is ineffective against

any creditor of the transferor.' ... This means, e.g., that a judgment creditor of the transferor may levy execution on the property."); *Teague Bros., Inc. v. Martin & Bayley, Inc.*, 750 S.W.2d 152, 156 (Tenn.App.1987) ("[T]he [Bulk Sales] Act provides only that the transfer is not rendered ineffective by errors and omission *unless* the transferee knows about them. Thus the transaction is only ineffective to those omitted creditors; *the entire transaction is not void.* The code drafters used the word "ineffective," not "void" or "voidable." ' White & Summers Uniform Commercial Code (2d Ed. 1984) § 19-4, p. 769.") (emphasis added). Whether the transfer changed the relationship between the two partners is a separate question determined by the Tennessee Uniform Partnership Act.

full pursuant to Tenn.Code Ann. § 61–1–139(2).

For the foregoing reasons, the Court REVERSES the Bankruptcy Court's decision granting summary judgment in favor of the Trustee and REMANDS this case to the Bankruptcy Court with the instruction to grant the Dudleys' motion for summary judgment. An Order in accord shall be entered.