IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 23, 2015

## LEISA REED v. RANDELL THURMAN, ET AL.

**Appeal from the Chancery Court for Rhea County**
**No. 10540     Jeffrey F. Stewart, Chancellor**

───────────────────────────

**No. E2014-00769-COA-R3-CV-FILED-MARCH 10, 2015**

───────────────────────────

This appeal stems from the trial court's finding that an implied partnership existed between Plaintiff and one of the Defendants with respect to a cattle-raising venture. Despite finding that the parties had already entered into a complete settlement regarding the partnership checking account and remaining partnership cattle, the trial court found that certain partnership assets had not been settled. The trial court's final decree directed that Plaintiff be paid one-half of the fair market value of these assets, and stated that if no agreement could be reached concerning their value, the items should be sold and the proceeds divided equally. We affirm in part, reverse in part, and remand the case for further proceedings as are necessary and consistent with this Opinion.

**Tenn. R. App. P. 3 Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

J. Shannon Garrison, Dayton, Tennessee, for the appellant, Leisa Ellen Reed.

Carol Ann Barron, Dayton, Tennessee, for the appellee, Randell Thurman.

Rebecca L. Hicks, Dayton, Tennessee for appellee, Leroy Thurman.

### OPINION

### I.     Background

Plaintiff/Appellant Leisa Reed ("Leisa") commenced this action seeking a declaration of her interest in a partnership she contends existed among herself,

Defendant/Appellee Randell Thurman ("Randell"), and Randell's father, Defendant/Appellee Leroy Thurman ("Leroy"). Although many of the pertinent facts are undisputed, the parties disagree in several respects over the meaning that should be attributed to the events that occurred in this case. In the mid-1990s, Leisa and Randell began a romantic relationship. Notwithstanding the fact that the romantic aspect to their relationship apparently subsided after a few years, their friendship continued. In fact, the two began living together sometime around 2000 in Leisa's home in Spring City, Tennessee. Randell's father Leroy lived nearby with his wife Doris.

According to Leisa, she entered into a partnership with Randell and Leroy in 2002 to buy and sell cattle. Although no written document was created to memorialize the discussion, she claims the parties agreed to a 50/25/25 share of the business while sitting in Leroy's living room. Leroy, who was to supply the seed money, would get a 50 percent share of the business; Leisa and Randell would each get a 25 percent share. Randell and Leroy dispute that such a conversation ever occurred. Although they do not deny that a cattle raising venture was formed in the early 2000s, they dispute that it was ever a partnership involving Leisa.

In furtherance of her participation in the alleged partnership, Leisa claims she helped do the book work, in addition to paying bills and "keeping up with the bank account." She also stated that she helped care for Leroy's wife Doris who had cancer. When a bank account for the cattle venture was opened at SouthEast Bank & Trust on May 22, 2004, in the name of L&R Farm[1], Leisa was designated as an account owner and authorized signatory. It is undisputed that Leisa wrote checks on that account and made deposits into it as well. She also claims to have performed other routine tasks for the alleged partnership such as picking up supplies, feeding cattle, allowing some of the cattle to graze on her property, administering medicine to the cattle, and collecting hay. Although Randell and Leroy do not deny that Leisa assisted their efforts occasionally[2], they suggest her involvement was not as significant as she suggests. For instance, they claim that her presence on the L&R Farm bank account was only intended as a convenience. Because Leisa lived with Randell and was at home when the bills arrived, listing her as a signatory gave her the authority to write checks as bills became due. Moreover, when testifying at trial as to Leisa's involvement in the cattle business, Randell stated that Leisa never joined him and Leroy at cattle auctions and noted that Leisa worked full-time in a job that required her to travel out of town almost weekly. Randell further testified that although Leisa sometimes made purchases for the cattle

---

[1] According to Randell's trial testimony, the L&R designation was named after Leroy and Randell.

[2] During his July 17, 2013, testimony, Randell stated that Leisa would ride with him around the farm and ride to get things for the cattle business. He also testified that Leisa helped to "bush hog" the farm on one occasion and that she had gone to get medicine for the cattle.

business, she always reimbursed herself for the purchases. From Randell and Leroy's perspective, Leisa was simply never a partner in the cattle venture.

In 2006, Leroy withdrew from cattle farming. On August 5, 2006, he received a check for $7,064.74. This check, which indicated that it was for "1/2 FARM," represented half of the balance of the L&R Farm checking account. On the same day that this check was written, Leisa wrote a check on her personal bank account for $5,000.00. The check indicated that it was for "7 COWS" and was made payable to Leroy. Leisa testified that she wrote the check to purchase cattle in furtherance of the alleged partnership; as Leroy had previously withdrawn, he owned certain cattle that he wanted to sell. Randell also wrote a personal check for $5,000.00 on August 5, 2006. The check was made payable to Leroy and indicated that it was for "6 COWS". Although Leisa points to this as evidence that she and Randell were in a partnership, Randell disputes the notion. When asked at trial why Leisa bought seven cows from Leroy, Randell claimed ignorance.

The parties' interpretation of facts also differs with respect to another check written by Leisa on her personal bank account. At trial, evidence was introduced showing that Leisa wrote a $12,000.00 check to Randell on January 29, 2008. The evidence shows that the day after this check was written, $12,000.00 was deposited into the L&R Farm bank account. Leisa testified that the $12,000.00 check was written in order to help buy equipment needed for the alleged partnership and stated that it was not written as a gift or in repayment for a loan obligation. Randell, on the other hand, denies that the $12,000.00 was a capital infusion in furtherance of a partnership between him and Leisa. During his trial testimony, Randell stated that he gave Leisa $12,000.00 worth of cash in exchange for the check she wrote out of her personal account. As he explained it, "I had cash saved up, and I needed money in the account, and she wrote me a check and kept the cash."

Although Leroy had withdrawn from the cattle venture in 2006, he later got back into the business. According to Randell's testimony, Leroy renewed his participation in the cattle project in 2008. Leroy's participation was brief, however, as he exited the cattle venture again at the beginning of 2009.[3] When he exited the business, he received over $45,000.00 out of the checking account of L&R Farm. The check was signed by Leisa and indicated that it was for "1/2 FARM". Randell testified that when his father left the business in 2009, there was over $91,000.00 in the L&R Farm bank account.

---

[3] According to the parties, Leroy exited the cattle business at various times throughout the years. His departures in 2006 and 2009, however, are the only dates specifically chronicled by the parties. Moreover, whereas Randell and Leroy characterize Leroy's exits as withdrawals from a venture solely between father and son, Leisa generally asserts that Leroy's withdrawals were from a partnership that existed between all parties.

According to Leisa, she and Randell "were going in as 50/50 partners" after Leroy withdrew.

On February 1, 2009, Leisa wrote a check out to L&R Farm in the amount of $35,000.00 using her own personal funds. At trial, she testified that she wrote the check after she and Randell decided to continue the alleged partnership following Leroy's withdrawal. She described the money as an investment into the partnership. Randell testified that he did not consider Leisa's monetary contributions to be in furtherance of a business partnership between them. Despite admitting that the two of them pooled their money together to buy cattle, he did not acknowledge them as partners. As he stated at trial, "We weren't partners. We just bought a herd of cattle together."

In January of 2010, Leisa decided that she no longer wanted to be associated with Randell. At trial, she testified that she wanted to end the alleged partnership upon learning of allegations that Leroy had molested her daughter. She further testified that the friendship between she and Randell ended when Randell refused to stop speaking with his father. When their friendship deteriorated, Randell and Leisa entered into an agreement that settled certain rights and obligations between the two. Dated January 31, 2010, this agreement reads as follows:

1. Randell Thurman will buy the house at 1432 Ideal Valley Road at $150,000.00. He has given Leisa Reed a $20,000.00 deposit. Randell Thurman will supply financing at his expense. Leisa Reed will continue to live in this home until March 31st, 2010. All furnishings belong to Leisa Reed. Leisa Reed has until May 31st to remove all of her personal property from this residence.

2. Farm-Randell Thurman has given Leisa Reed $53,000.00 for her half of Beef Cattle.

3. Taxes-Leisa Reed to claim ½ of farm losses (approx. $35,000.00) on her personal 2009 Tax Filing.

4. 2003 Chevrolet Black Dually Pickup Truck-Randell Thurman to pay back the loan to Leisa Reed $11,270.93 for her interest in this vehicle before July 31, 2010.

5. Randell Thurman agrees to allow Leisa Reed to continue to charge to his Gastown account until March 31st, 2010, but not to exceed $160.00 per month.

Whereas Leisa argues this agreement was not a complete settlement between her and Randell, Randell argues strongly to the contrary.

The first point of contention regarding the agreement centers on the agreement's failure to divide any property used incident to the cattle venture. At trial, Randell testified that the agreement did not contain any provision pertaining to equipment because all of the equipment belonged to him; he claimed there was nothing to settle in this regard, and he indicated that Leisa had previously affirmed this. In contrast, Leisa testified that the parties had discussed settling their rights with respect to the equipment. According to Leisa, Randell had indicated that he would pay her for her share, but he never did.

Leisa and Randell also dispute whether the agreement settled their rights with respect to the L&R Farm bank account. The crux of their disagreement stems from their differing interpretations as to what the second provision in their agreement represented. According to Leisa, the $53,000.00 payment she received was solely for her share of the value of the remaining cattle. In support of this position, she testified that she and Randell had over $100,000.00 worth of cattle at the time the agreement was made. Because she claims that the $53,000.00 payment did not include any portion of her interest in the L&R Farm bank account, she asserts that Randell presently owes her half of the amount that was remaining in the account.

With regard to the agreement's language that the $53,000.00 payment to Leisa was "for her half of Beef Cattle," Randell asserts the payment represented Leisa's share of the remaining cattle *and* her interest in the L&R Farm bank account. At trial, he testified that he and Leisa did not have over $100,000.00 worth of cattle at the time of the agreement. Rather, he asserted that they had about $40,000.00 worth of cattle at the time. Moreover, he testified that the L&R Farm bank account had a balance of approximately $65,000.00 at the time of the agreement. He claimed these were the numbers used to derive the $53,000.00 payment. As he stated, "Her half of the farm account was 32,687.05. I bought the rest of her half of the cattle, 20,312.95. It made it $53,000."

After the trial of the matter was concluded, the trial court entered a final decree adjudicating Leisa's claims regarding the existence of a partnership. Although the trial court found that she had failed to prove by clear and convincing evidence that an implied partnership existed between all parties as early as 2002, the trial court concluded that an implied partnership did exist between Leisa and Randell on August 5, 2006. As the trial court noted, that was the day when each wrote separate checks to purchase cattle from Leroy. The trial court further found that the implied partnership continued until January 31, 2010, when Leisa received the $53,000.00 check pursuant to the settlement agreement between her and Randell. Based on its consideration of the testimony that had been

5

offered at trial, the trial court concluded that the $53,000.00 payment represented "one-half of the checking account balance and one-half of the value of the cattle unsold on that date[.]" Although the trial court thus rejected Leisa's argument that the $53,000.00 payment only represented the value of the unsold cattle, it accepted her argument that the January 31, 2010, agreement did not embrace a settlement of rights with respect to equipment acquired during the partnership period. Upon making findings regarding which assets constituted partnership property, the trial court directed that Randell pay Leisa one-half of their fair market value. The trial court ruled that if the parties were unable to agree on the fair market value of the items, the assets should be sold and the proceeds divided equally between Leisa and Randell. This appeal followed.

## II. Issues Presented

On appeal, the parties[4] independently raise several issues for review. As we perceive it, Leisa raises the following issues:

1. Whether the evidence presented at trial preponderates convincingly in favor of a finding that Leisa was a partner in L&R Farm before August 5, 2006.

2. Whether the January 31, 2010, agreement was a settlement and satisfaction of Leisa's interest in the partnership checking account.

3. Whether the trial court correctly classified the partnership property.

Randell's presented issues for review, as we perceive and reword them, are as follows:

1. Whether the trial court erred in finding that Randell was in an implied partnership with Leisa from 2006 to 2010.

2. Whether the trial court erred in finding that the equipment purchased out of the funds in the L&R Farm account were assets of the implied partnership that should be valued and divided equally between Leisa and Randell.

## III. Standard of Review

In reviewing any findings of fact by the trial court, our review is *de novo* "upon the record of the trial court, accompanied by a presumption of the correctness of the

---

[4] Although Leroy's brief lists four issues that follow a heading entitled "Statement of Law," we do not perceive the issues to be independently raised by Leroy. As we perceive it, the "Statement of Law" section of Leroy's brief operates as a response to the arguments developed in the heart of Leisa's brief.

finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV. Discussion

Based on the issues presented by the parties' briefs, we find that there are three primary issues for our consideration. First, we must review the trial court's finding that an implied partnership existed between Leisa and Randell from 2006 to 2010. Second, we must consider whether the trial court erred in finding that the January 31, 2010, agreement was a settlement and satisfaction of Leisa's interest in the partnership checking account. Third, we must consider whether the trial court erred in determining which assets should be divided as partnership property.

We first address whether the trial court erred in finding that an implied partnership existed between Leisa and Randell from August 5, 2006, until they executed a settlement agreement on January 31, 2010. The Revised Uniform Partnership Act defines a partnership as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit . . . ." Tenn. Code Ann. § 61-1-101(7) (2013). "We have held that determining what constitutes a partnership is generally a matter of law, but whether a partnership exists under conflicting evidence is a question of fact." *In re Estate of Price*, 273 S.W.3d 113, 138 (Tenn. Ct. App. 2008) (citing *Wyatt v. Brown*, 281 S.W.2d 64, 68 (Tenn. Ct. App. 1955)). In making a determination whether a partnership exists, "no one fact or circumstance is the conclusive test[.]" *Roberts v. Lebanon Appliance Serv. Co.*, 779 S.W.2d 793, 795 (Tenn. 1989). "[E]ach case must be decided upon a consideration of the totality of all relevant facts." *Pettes v. Yukon*, 912 S.W.2d 709, 715 (Tenn. Ct. App. 1995) (citation omitted).

In *Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991), the Tennessee Supreme Court considered the issue of whether an implied partnership existed. The Court stated:

> [T]he existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. *Wyatt v. Brown,* 39 Tenn.App. 28, 281 S.W.2d 64, 67 (1955). Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. *Wyatt,* 281 S.W.2d at 67. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties

> have an understanding of the legal effect of their acts. *Roberts,* 779 S.W.2d at 795–96. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. *Wyatt,* 281 S.W.2d at 67. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Bass*, 814 S.W.2d at 41. In cases such as this one, where no written partnership agreement exists, the party alleging the existence of a partnership bears the burden of proving its existence by clear and convincing evidence. *Tidwell v. Walden*, 330 S.W.2d 317, 319 (Tenn. 1959).

Upon review of the record transmitted to us, we find no error in the trial court's conclusion that an implied partnership between Leisa and Randell began in August of 2006. Although Leisa urges this Court to determine that she became a partner as early as 2002, and Randell urges this Court to determine that Leisa never was a partner, we find that the trial court's conclusion is properly supported based on the evidence presented at trial. Despite the lack of clear and convincing evidence regarding the existence of a partnership prior to August of 2006, the evidence clearly supports a finding that an implied partnership existed between Leisa and Randell after that date.

Although Leisa testified that the parties orally agreed in 2002 to be partners in a cattle venture, Randell testified that such a conversation never occurred. Based on the conclusions in its final decree, the trial court necessarily discredited Leisa's testimony on this issue. We will defer to the implicit finding of the trial court that Randell and Leroy did not orally agree to be formal partners with Leisa.

Of course, even though the evidence does not show that all of the parties actually intended to become partners, an implied partnership among them may still exist. Again, "[i]t is the intent to do the things which constitute a partnership that determines whether individuals are partners[.]" *Bass*, 814 S.W.2d at 41 (citation omitted). Here, the record does not clearly indicate that Leisa was a partner before August of 2006. Despite the fact that Leisa was a signatory to the L&R Farm bank account, we note that Leroy wife's Doris was also listed as an authorized signatory. No party, including Leisa, has ever contended that Doris was a partner in the cattle venture, and Randell testified that Leisa was put on the bank account solely as a convenience to him. Similarly, although Leisa testified to her role in keeping books for the business as evidence of her participation in a

partnership, she admitted that Doris also participated in keeping books for the venture. Moreover, based on Leisa's identification of her own handwriting in the cattle venture's books during her testimony, we agree with Randell and Leroy that her role in bookkeeping was not as significant as she suggests. Indeed, a close examination of her testimony indicates that a significant portion of her bookkeeping efforts were devoted to merely adding up the totals of entries already entered by Randell, and for many records, her contribution appears to have been minimal. Per her testimony:

> Q: And here, the repairs, whose handwriting is that all but one entry?
> A: It looks like Randy's handwriting. That was in '06. That's when I was traveling some, and I had taught him how to write them down, so I wouldn't have such a mess when I got home.
> Q: And the cattle sold, that's all Randy's handwriting, isn't it?
> A: All but where they were tallied up. I added them up.
> Q: So he did all the bookkeeping then on the cattle that was sold?
> A: In '06, yes, he helped.
> Q: And all the supplies, that full page of supplies that are bought, that's all Randy's handwriting, isn't it, every bit of that?
> A: I can't see it from there. I'm sorry. Supplies. Some of it is mine. I've wrote some of the checks in. I've tallied some of the amounts. But, yeah, most is.

In addition, we note that Leisa testified that Leroy and Randell primarily made the purchases for the cattle business, and she stated that she never went to the cattle auctions. When Leisa did make purchases out of her personal account for the cattle business, she was reimbursed. She further testified that she had no experience in the cattle business before she became involved with Randell. Moreover, although Leisa claims that her caretaking efforts for Randell's mother are illustrative of her participation in the partnership, we cannot draw such an inference. Such work is certainly commendable, but in no way is it directly related to the furtherance of success in the cattle business[5]. When considered together, the events that occurred prior to August of 2006 simply fail to establish that Leisa was an implied partner in the cattle enterprise. Despite her association with the business during that time, her involvement does not clearly and convincingly evidence the contribution of a partner. *See Waddell v. Rustin*, No. E2010-

---

[5] We note that although Leisa testified her caretaking efforts were part of her obligations under a partnership agreement reached among the parties, the trial court did not find that an express partnership agreement was established in this case.

02342-COA-R3-CV, 2011 WL 2650702, at *7-8 (Tenn. Ct. App. July 7, 2011) (declining to find an implied partnership existed when one's efforts were "better characterized as helping out rather than the contribution of an equal partner"). We therefore agree with the trial court that Leisa did not satisfy her burden of proving the existence of a partnership prior to August of 2006.

With that said, however, there is clear and convincing evidence that an implied partnership existed between Leisa and Randell after August 5, 2006. The record transmitted to us indicates at least three instances where Leisa made capital contributions in furtherance of a cattle enterprise between her and Randell. The first of these instances was on August 5, 2006, following Leroy's withdrawal from the cattle business. On that date, both Leisa and Randell wrote Leroy separate checks for $5,000.00 to purchase cattle. Leisa testified that her purchase of cattle was in furtherance of a partnership between her and Randell. Randell testified he did not know why Leisa had purchased cattle. Leroy's recollection was apparently clearer than his son's. In his testimony, he stated, "[t]hat's when she was going in with Randy on the cattle."

The second instance of a significant capital contribution made by Leisa occurred approximately a year and a half later. On January 29, 2008, Leisa wrote a check to Randell for $12,000.00; the evidence indicates that this check was deposited into the L&R Farm bank account the next day. Leisa testified that she contributed the money in order to help buy equipment that was needed. Although Randell denied that Leisa's check was written for the purposes of a capital contribution and instead testified that he had given Leisa $12,000.00 worth of cash in exchange for the check, the trial court's oral ruling, which was incorporated by reference into the final decree, indicated that Randell was unable to substantiate his position on this issue.

The third instance of a capital contribution made by Leisa occurred subsequent to Leroy's second withdrawal from the cattle business. On February 1, 2009, Leisa wrote a check out to L&R Farm in the amount of $35,000.00 using her own personal funds. She testified that the money was an investment into the partnership. Although Randell admitted that he and Leisa pooled their money together to buy cattle, he did not acknowledge them as partners.

Under the law, Randell's refusal to acknowledge the existence of a partnership is not determinative. "The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts." *Bass*, 814 S.W.2d at 41 (citation omitted). "[T]he existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill,

experience, or money." *Id.* Notwithstanding Randell's characterization of his relationship with Leisa, we find that Leisa's monetary contributions, when considered alongside the totality of the facts outlined in the record, support a finding that an implied partnership existed subsequent to August 2006. Randell's testimony clearly indicates that a partnership relationship existed between him and Leisa:

> Q: All right. [Leisa] pulled her money together with yours; correct?
> A: Part of it, yeah.
> Q: And, of course, you were pulling your monies together to buy cattle; correct?
> A: Right.
> Q: And you were going to sell the cattle?
> A: Right.
> Q: And you were hopefully going to make a profit on the cattle?
> A: That's right.
> Q: And then you were going to split the profits out of the cattle?
> A: That's right.

In addition, even though Randell refused to describe Leisa as a partner during his trial testimony, he had previously characterized her as such. At trial, a copy from the first page[6] of his last will and testament was admitted into evidence as an exhibit. Therein, Randell affirmed as follows: "I have a longstanding life relationship with Leisa Reed who is a partner with me in all of my endeavors, both business and personal." Despite Randell's assertion that the trial court erred in finding that an implied partnership existed between him and Leisa, we find that the evidence clearly supports its determination.

We next turn our attention to the trial court's finding that the January 31, 2010, agreement between Leisa and Randell was a settlement and satisfaction of Leisa's interest in the partnership checking account. As already noted, Randell testified that the $53,000.00 payment to Leisa represented payment for Leisa's share of the value of unsold, remaining cattle and her share of the remaining balance from the L&R Farm account at SouthEast Bank & Trust. In support of this position, he testified that there was about $40,000.00 worth of cattle at the time of the agreement and approximately $65,000.00 in the partnership checking account. Leisa, by contrast, testified that the $53,000.00 payment related solely to the value of the remaining cattle and attempted to support her position by claiming that over $100,000.00 worth of cattle existed at the time of the agreement. Having reviewed the record, we note that the trial court's oral ruling, which was incorporated by reference into the final decree, accredits Randell's testimony

---

[6] The bottom corner of this page contains a notation dating the will to "9-10-09."

11

on what the $53,000.00 payment represented.   The trial court's acceptance of Randell's testimony regarding the nature of the $53,000.00 payment is entitled to considerable deference on appeal. *See Pettes*, 912 S.W.2d at 716 ("Findings of fact by the trial court involving the credibility of witnesses are entitled to great weight on appeal.") (citation omitted).

Although Leisa argues in her brief that this Court should reverse the trial court due to the fact that the settlement agreement makes no specific mention that the $53,000.00 payment included her share of the partnership account, we decline to find error in the trial court's adjudication of the issue.   The agreement states that "Randell Thurman has given Leisa Reed $53,000.00 for her half of Beef Cattle[,]" but what "her half of Beef Cattle" actually represents is not readily clear.   The language can reasonably be construed to support several interpretations.   For example, does it represent only her share of the unsold, remaining cattle of the partnership, or does it represent her share of the remaining cattle in addition to her share of the proceeds for cattle already sold?   By accrediting Randell's testimony to give meaning to the agreement[7], the trial court concluded that the $53,000.00 payment represented Leisa's share of the value of the remaining partnership cattle and her share of the balance of the partnership bank account.   As already noted, we discern no error in this conclusion.

Finally, we address whether the trial court erred in determining which property belonged to the partnership.   Under Tennessee law, "property transferred to or otherwise acquired by a partnership is property of the partnership and not of the partners individually."   Tenn. Code Ann. § 61-1-203 (2013).   As we explained in *Finch v. Raymer*, No. W2012-00974-COA-R3-CV, 2013 WL 1896323 (Tenn. Ct. App. May 6, 2013), whether property is acquired by a partnership is governed by Tennessee Code Annotated § 61-1-204(a).   Under that statute, "property is deemed partnership property if acquired in the name of the partnership or in the name of one or more of the partners *with* an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership."   *Id.* at *10 (citing Tenn. Code Ann. § 61-1-204(a)).   Where partners have acquired property but have failed to express their intent by referencing a partnership in the title documents, the statute provides two rebuttable presumptions.   *Id.*   First, "[p]roperty is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one (1) or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership."   Tenn. Code Ann. § 61-1-204(c) (2013).   Second, "[p]roperty acquired in the name of one (1) or more of the partners, without an indication in the instrument transferring title to the property of the

---

[7] *See Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985) (noting that "where there exists an ambiguity in a contract, parol evidence is admissible to explain the actual agreement") (citation omitted).

person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes." Tenn. Code Ann. § 61-1-204(d) (2013).

During the course of the litigation in the trial court, the trial judge directed that Leisa submit a list of property that she considered to be partnership property, along with supporting evidence. Defendants were directed to respond to Leisa's submission with a list of property they contended was separate property. After these submissions were filed with the trial court, the Clerk and Master prepared a report at the trial court's direction, wherein the Clerk outlined the disputed farm equipment based on submitted "tax returns, cancelled checks and receipts." The Clerk's report,[8] which was prepared with the assistance of a Certified Public Accountant, provided specific details for each piece of equipment, including the date of purchase, the purchaser, the bank account out of which the item was purchased, and the purchase amount. Although Leisa filed certain exceptions to the Clerk's report after it was initially submitted, at trial, her counsel stated that she no longer had any objections. Of course, notwithstanding the trial court's acceptance of the Clerk's report, the task of determining which listed assets actually constituted partnership property remained.

In its final decree, the trial court determined the issue of ownership of assets by concluding that the following items constituted property of the implied partnership which were subject to division: "Hay Rings," "Gates," "Post Hole Digger/Auger," "Sprayer," "Cattle Chute," "2-Three Ton Feeders," "6-Ton Feeder," and "4-Three Ton Feeders." As the trial court noted, the evidence showed that these items were purchased out of the L&R Farm bank account during the period of the implied partnership. Although Leroy takes no issue on appeal with regard to the trial court's adjudication of property, both Leisa and Randell assert that the trial court's determination was in error. Whereas Leisa argues that the trial court did not compensate her for all of the partnership property in which she has an interest, Randell claims that Leisa is not entitled to any monies for alleged partnership assets.

We first address Randell's position on this issue. Importantly, we note that we have already determined that an implied partnership existed in this case. To the extent that there is property belonging to the partnership in which Leisa has an interest, she is entitled to compensation. Moreover, although Randell argues that the January 2010 settlement agreement settled all property rights between him and Leisa, we find no error in the trial court's conclusion that it did not. Leisa testified that the parties had discussed settling their rights with respect to the farm equipment, and despite representations from

---

[8] We note that the Clerk filed an "Amended Master's Report" shortly after the filing of the initial report; this amended report was submitted in order to supply certain information that had inadvertently been omitted from the original submission.

Randell that he would pay her for her share, she testified that he never did.   A review of the settlement agreement confirms that it does not address the parties' rights concerning farm equipment, and we accordingly find that the trial court did not err in awarding Leisa compensation for identified partnership assets.

Specifically, we affirm the trial court's determination that Leisa had an interest in the "Hay Rings," "Gates," "Post Hole Digger/Auger," "Sprayer," "Cattle Chute," "2-Three Ton Feeders," "6-Ton Feeder," and "4-Three Ton Feeders."   The trial court awarded Leisa an interest in these assets upon determining that they were purchased out of the L&R Farm bank account during the period of the implied partnership.   We agree with this conclusion of the trial court.   As already noted, property is presumed to be partnership property if purchased with partnership assets.   Tenn. Code Ann. § 61-1-204(c) (2013) ("Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one (1) or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.").   Here, Leisa was awarded an interest in equipment purchased out of the L&R Farm bank account during the period of the implied partnership, and upon review of the record transmitted to us, we see no evidence that justifies rebutting the presumption that this equipment is partnership property.   Moreover, we find no error in the trial court's decision to give Leisa a 50% interest in this equipment.   The record confirms that Leisa made significant capital contributions during the period of the implied partnership, and she even testified that one of these contributions was specifically made to purchase equipment for the partnership. In addition, we note that the settlement entered into by Leisa and Randell in January 2010 generally treated the two as on equal footing, expressly giving Leisa payment for "**her half** of Beef Cattle." (emphasis added)

Notwithstanding our affirmance of the trial court's decision to award Leisa an interest in the "Hay Rings," "Gates," "Post Hole Digger/Auger," "Sprayer," "Cattle Chute," "2-Three Ton Feeders," "6-Ton Feeder," and "4-Three Ton Feeders," the present appeal requires us to consider whether the trial court's final decree afforded Leisa complete relief.   In her brief, Leisa challenges the trial court's award of property in three respects.   First, she contends that the trial court erred in failing to include a "Hay Bailer" purchased on March 20, 2008, as partnership property.   Second, she contends that the trial court erred in failing to include a "Manure Spreader" purchased on April 29, 2006, as partnership property.   Leisa's third grievance on appeal with regard to the trial court's adjudication of property is raised generally; she simply asserts that if this Court determines she was a partner before August 5, 2006, various other referenced assets should be declared partnership property.

We will deal with the last of these raised concerns first. Although Leisa asserts that various other assets should be considered partnership property if we determine that she was a partner before August 5, 2006, the evidence does not clearly and convincingly establish that she was a partner before that date. To the extent she seeks an additional award of compensation based on such a determination, her request for relief is not tenable.

With respect to the "Hay Bailer," we agree with Leisa that the trial court erred in failing to include this asset as partnership property. Under Tennessee Code Annotated § 61-1-204, property is deemed to be partnership property if acquired in the name of a partnership. Tenn. Code Ann. § 61-1-204(a)(1) (2013). Although it is true that the "Hay Bailer" was not purchased out of the L&R Farm bank account, the invoice listed the name of the purchaser as "L&R Farm." As the asset was acquired in the name of the partnership, it constitutes partnership property under the statute. We reverse the judgment of the trial court to the extent that it failed to compensate Leisa for her share of the "Hay Bailer."

We do not agree with Leisa, however, that the trial court should have considered the "Manure Spreader" to be partnership property. Although it is true that the "Manure Spreader" was purchased with funds out of the L&R Farm bank account, it was purchased prior to Leisa's inception as an implied partner. Despite her arguments to the contrary, the evidence does not clearly and convincingly support Leisa's position that she was a partner when the "Manure Spreader" was purchased on April 29, 2006. As we have already noted, an implied partnership involving Leisa was not established until August 5, 2006 and after the previous partnership between Leroy and Randell ceased to exist.

In holding that Leisa is not entitled to compensation for an alleged interest in the "Manure Spreader," we find that it is important to emphasize that she did not become a partner by way of an express agreement. Moreover, when Randell bought out Leroy's interest in the partnership in 2006, the partnership ceased to exist and any remaining assets became the separate property of the individual partners. Leisa and Randell each subsequently made $5000 cash contributions out of their personal accounts to purchase cattle together. Leisa made two additional cash contributions to purchase "new equipment" and to purchase additional cattle. She did not formally buy an interest in the Leroy and Randell partnership and there is no indication that Leisa contributed any funds to buy a specific interest in the "Manure Spreader" or any other asset acquired by Leroy and Randell's business prior to August 5, 2006. Despite her entitlement to be compensated for equipment purchased from the L&R Farm bank account during the period of time she made capital contributions and participated in the cattle business as an

15

implied partner with Randell, Leisa has no right to be reimbursed for equipment purchased by the previous partners prior to August 5, 2006.

## V. Conclusion

We hereby affirm the trial court's determination that an implied partnership existed between Leisa and Randell from August 5, 2006, until January 31, 2010. We also affirm its determination that the $53,000.00 payment discussed in the January 31, 2010, agreement settled Leisa's rights in the remaining partnership cattle and the L&R Farm bank account. Although we also affirm the trial court's decision ordering Randell to pay Leisa one-half of the fair market value of the "Hay Rings," "Gates," "Post Hole Digger/Auger," "Sprayer," Cattle Chute," "2-Three Ton Feeders," "6-Ton Feeder," and "4-Three Ton Feeders," we find that it erred in not awarding Leisa any interest in the "Hay Bailer." We hereby amend the trial court's final decree to require Randell to pay Leisa one-half of the fair market value of the "Hay Bailer." As with the other assets in which the trial court awarded Leisa a partnership interest, if the parties are unable to reach an agreement concerning the fair market value of the "Hay Bailer," it is to be sold and the proceeds divided equally between Leisa and Randell. Costs on appeal are taxed one-half to the Plaintiff/Appellant, Leisa Reed and one-half to Defendants/Appellees, Randell Thurman and Leroy Thurman, for which execution may issue if necessary. This case is remanded to the trial court for further proceedings as are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE