FILED
Jun 18, 2021
02:18 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| MARKELE ROSS, | ) | Docket No. 2020-08-1077 |
| Employee, | ) | |
| v. | ) | |
| IMMACULATE UNLIMITED LLC, | ) | |
| Employer, | ) | State File No. 70191-2020 |
| And | ) | |
| ACCIDENT FUND INS. CO., | ) | |
| Carrier. | ) | Judge Deana Seymour |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This Court held an Expedited Hearing on May 21, 2021, to determine whether Mr. Ross is entitled to medical and temporary disability benefits. Mr. Ross asserted he was Immaculate Unlimited LLC's employee, which it denied. The Court holds that Mr. Ross is unlikely to prevail at a hearing on the merits that he was Immaculate's employee; thus, he is not entitled to the requested benefits.

## History of Claim

Mr. Ross cleaned commercial businesses through Immaculate, which received customers under a Jani-King franchise agreement.[1] He claimed that he suffered multiple injuries while working as an employee for Immaculate on September 21, 2019, when he slipped and fell at a customer's business. Immaculate challenged Mr. Ross's employment status.[2]

Mr. Ross testified he suggested to his fiancée, Keisha Tate, that they start a Jani-King franchise and split the profits. He and Ms. Tate met with Barry Sawyer, the regional

---

[1] River City Franchising, LLC d/b/a Jani-King of Memphis, sold a Jani-King franchise to Immaculate.

[2] Immaculate and its carrier, Accident Fund, were represented by separate counsel but maintained the same position. The Court refers to the employer and carrier as "Immaculate."

manager of Jani-King of Memphis, in May 2018 to review the franchise program. After the meeting, they expressed their intent to operate a franchise as a limited liability company, since Jani-King required franchisees to be member-owned as a corporation or a limited liability company.

With Mr. Sawyer's assistance, Ms. Tate filed Articles of Organization with the State of Tennessee to form Immaculate as a limited liability company in August 2018. The Articles noted Immaculate consisted of two members but did not list them. Mr. Ross was listed in the "Other Provisions" section, and Ms. Tate signed the Articles. Ms. Tate testified she understood the two members to be herself and Mr. Ross.

Before closing on the franchise purchase, Mr. Ross decided not to be on the Jani-King franchise agreement. Instead, Ms. Tate entered into the agreement as President and Secretary of Immaculate on August 30, 2018. She purchased the franchise for $10,000.00, consisting of a $5,000.00 cash payment plus a $5,000.00 promissory note to Jani-King to be paid from gross revenue invoiced by Jani-King under Immaculate's accounts.

Mr. Ross and Ms. Tate testified that Mr. Ross orally agreed to reimburse Ms. Tate for her cash franchise down payment in monthly payments.[3] Further, Mr. Ross would receive 100% of Immaculate's net receipts from Jani-King for the account work, and would pay Ms. Tate 100% of the receipts for all side jobs he secured outside the Jani-King accounts.

Mr. Ross testified he would primarily clean, and Ms. Tate would benefit from the money they received from jobs outside of Jani-King accounts. He testified that since Ms. Tate owned the franchise, she decided whether to accept Jani-King accounts, received the contracts from Jani-King, and gave them to Mr. Ross to perform the work.

Ms. Tate acknowledged that Mr. Ross did not complete an employment application or any other federal or state employment documents. She paid no state or federal payroll taxes and provided no benefits to Mr. Ross. Ms. Tate also testified that Mr. Ross did not give notice or opt into workers' compensation coverage. She testified that Jani-King contracted with customers and offered the accounts to its franchisees, who could accept or reject them. When she accepted an account, Jani-King invoiced the customer monthly and collected payments. Jani-King then deducted its fees and sent an accounting statement to Immaculate with a check for its services. Ms. Tate cashed the check from Jani-King and paid Mr. Ross the entire amount.

---

[3] Ms. Tate testified that Mr. Ross made some of the payments while he was working the contracts but was behind on his monthly payments to her.

In November 2018, Mr. Ross and Ms. Tate met with Mr. Sawyer to review its first Jani-King business offering. Ms. Tate accepted the offer. After about two months, a dispute occurred between Immaculate and the customer over cleaning issues and payment. Mr. Ross met with the customer representative, who terminated Immaculate's services. Jani-King transferred the account from Immaculate in January 2019.

Mr. Sawyer testified that Jani-King tried to send Immaculate three other accounts between January 31 and February 27. Immaculate declined each offering and did not ask for further work. Jani-King advised Ms. Tate that Mr. Ross did not have rights to the business and needed to be a silent partner. Mr. Sawyer testified that Mr. Ross advised that he invested in the business and had the right to communicate with customers, but Mr. Ross denied making that comment.

In July 2019, Jani-King offered Immaculate an account with Progress Residential. Ms. Tate, Mr. Ross, and John Calhoun of Jani-King met at Progress to inspect the property and decide whether Immaculate would accept the account. Immaculate accepted, and Mr. Ross cleaned three days per week for about two hours each day. He had no set hours, but Progress required that he work in the evening. Mr. Ross testified the quicker he worked, the quicker he could get out. Progress provided cleaning supplies, but Mr. Ross occasionally used his own vacuum. Mr. Ross could decide who would help him with the cleaning and could terminate helpers at any time.

While cleaning at Progress on September 21, Mr. Ross claimed he slipped, fell, and injured his right shoulder, hand, forearm, and ligaments in his right knee. He was alone and called 9-1-1 and Ms. Tate. The ambulance transported him to the hospital, where he was diagnosed with contusions of the right shoulder, back, and hand and released to light duty on September 24.

Initially, Immaculate accepted Mr. Ross's claim and provided a panel for authorized treatment. After investigation, however, Immaculate denied Mr. Ross was its employee.[4]

Mr. Ross asserted that he was an employee of Immaculate at the time of his injury. He testified Ms. Tate, the owner of Immaculate, employed him to perform cleaning services for accounts she accepted from Jani-King. Mr. Ross further claimed Ms. Tate directed and controlled his work. Immaculate countered that Mr. Ross was either a member of Immaculate's limited liability company, a partner with Ms. Tate in Immaculate's franchise doing business as Jani-King of Memphis, or an independent contractor.

---

[4] Immaculate also denied the claim based on medical noncompliance and the idiopathic nature of Mr. Ross's fall.

From acceptance of its first Jani-King account in November 2018 until Mr. Ross's claimed injury on September 21, 2019, Immaculate received total payments of $3,775.55. Ms. Tate cashed each check from Jani-King and paid 100% to Mr. Ross. Immaculate has not requested or accepted any further business from Jani-King.

**Findings of Fact and Conclusions of Law**

Mr. Ross must present sufficient evidence showing he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2020). The threshold issue is whether an employer-employee relationship existed between Mr. Ross and Immaculate at the time of his alleged injury.

The Court begins its analysis by defining the term "employee" as "every person . . . in the service of an employer . . . under any contract of hire . . . written or implied." Tenn. Code Ann. § 50-6-102(12)(A). The law requires "that there be an express or implied agreement for the alleged employer to remunerate the alleged employee for his services." *Black v. Dance,* 643 S.W.2d 654, 657 (Tenn. 1982).

Tennessee Code Annotated section 50-6-102(12)(B) further provides: "'Employee' includes a sole proprietor, a partner, or a member of a limited liability company who devotes full time to the proprietorship, partnership, or limited liability company, respectively, and who elects to be included in the definition of 'employee' by filing written notice of the election . . . at least thirty (30) days before the occurrence of any injury or death."

The Court finds that Mr. Ross and Ms. Tate agreed to start a business to accept customers through a franchise agreement with Jani-King. Jani-King required their franchisees to be member-owned as a corporation or a limited liability company.

After meeting with Mr. Sawyer of Jani-King, Mr. Ross and Ms. Tate expressed their intent to form a limited liability company to qualify as a franchisee. Mr. Sawyer helped them complete the Articles of Organization to form Immaculate, which Ms. Tate signed and filed with the state. Mr. Ross's name was entered in the "Other Provisions" section of the Articles, and the form noted the company consisted of two members, which Ms. Tate understood to be herself and Mr. Ross. Immaculate was formed in August 2018, and afterward, Ms. Tate signed a franchise agreement with Jani-King to designate Immaculate as a franchisee of Jani-King.

Mr. Ross decided not to enter into the agreement but was never removed from Immaculate's Articles of Organization. Thus, he remains a member of the limited liability company. Moreover, he never filed a written election to be included as an employee. Therefore, the Court holds Mr. Ross is unlikely to prevail at a hearing on the merits that

4

he was an employee of Immaculate under Tennessee Code Annotated section 50-6-102(12)(B).

Alternatively, the Court considers whether Mr. Ross was a partner with Ms. Tate in Immaculate's Jani-King franchise. In Tennessee, a "partnership means an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit . . . whether or not the persons intend to form a partnership." Tenn. Code Ann. § 61-1-101(7) and § 61-1-202. The Court must analyze the acts of the parties, rather than their stated intent, to determine the legal intent of their employment relationship. *Roberts v. Lebanon Appliance Serv. Co.*, 779 S.W.2d 793, 795 (Tenn. 1989).

Here, Mr. Ross suggested that he and Ms. Tate invest in a Jani-King franchise. Ms. Tate formed Immaculate, naming two members. They invested $10,000.00 to purchase the franchise: Ms. Tate made a cash down payment, which Mr. Ross agreed to repay, and she signed a promissory note to Jani-King, which it subtracted from gross customer receipts before paying Immaculate. The Court finds that Immaculate did not pay Mr. Ross wages. Rather, Mr. Ross received 100% of Immaculate's net receipts from Jani-King, and Ms. Tate would have received 100% of any side jobs. The Court further finds Mr. Ross consulted with Ms. Tate on each offer, reviewed the scope of work, and advised her on whether to accept the account. He also discussed delinquent customer payments directly with the customers.

Based on these findings, the Court finds a partnership existed between Immaculate and Mr. Ross at the time of his claimed work injury. Since he did not "opt-in" as an employee of Immaculate, the Court holds Mr. Ross is unlikely to prevail at a hearing on the merits that he was Immaculate's employee under Tennessee Code Annotated section 50-6-102(12)(B).

In light of the Court's holdings above, the remaining issues are moot.

IT IS, THEREFORE, ORDERED as follows:

1. The Court denies Mr. Ross's requested benefits.

2. The case is set for a Scheduling Hearing on August 9, 2021, at 9:30 a.m. Central Time. The parties must call toll-free at (866) 943-0014 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED June 18, 2021.**

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing, along with Mr. Ross's affidavit
4. Accident Fund's Motion to Extend Pre-Expedited Hearing Deadlines to April 21, 2021
5. Order Granting Motion to Extend Pre-Expedited Hearing Deadlines
6. Mr. Ross's Motion to Extend Discovery Period
7. Accident Fund's Pre-Expedited Hearing Statement
8. Accident Fund's Witness List
9. Accident Fund's Exhibit List
10. Accident Fund's Response to Mr. Ross's Motion to Extend Discovery Period
11. Immaculate Unlimited's Emergency Motion to Continue Expedited Hearing
12. Order on Motion to Extend Discovery Period and Emergency Motion to Continue Expedited Hearing
13. Gordon Aulgur's Emergency Motion to Withdraw
14. Order on Emergency Motion to Withdraw

Exhibits
1. Mr. Ross's 1099s for 2018 and 2019
2. Medical records from OrthoSouth
3. Medical records from Imaging Center
4. Medical records from Dr. John Lochemes (Collective)
5. Photographs of Mr. Ross's hands and the accident site (For identification only)
6. 911 recording
7. Two videos filed by Mr. Ross (Collective)
8. Medical bills (For identification only)
9. Wage Statement
10. Notice of Denial
11. Notice of Change or Termination of Benefits (For identification only)
12. River City Franchising business records
13. Deposition of Mr. Ross
14. Discovery propounded on Immaculate Unlimited by Accident Fund
15. Notice of Deposition of Keisha Tate
16. Accident Report completed by Keisha Tate

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on June 18, 2021.

| Name | Certified Mail | U.S. Mail | Email | Service sent to: |
|---|---|---|---|---|
| Markele Ross, Employee | | | X | Mross111728@gmail.com |
| Catherine Dugan, Employer's Attorney | | | X | cate@petersonwhite.com |
| Hope Calabro, Carrier's Attorney | | | X | hope@thecalabrolawfirm.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
wc.courtclerk@tn.gov



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*